Beckwith Machinery Company, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued February 28, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*Edward T. Baker,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*Paul S. Roeder,* Deputy Attorney General, for respondent.

Opinion by Judge Mencer, April 28, 1978:

Beckwith Machinery Company (Beckwith) appeals from that portion of an order of the Board of Finance

and Revenue (Board) which reassessed a use tax, in the amount of $12,791.71, for the period of April 1, 1972 through February 27, 1975, on property used in the operations performed by Beckwith at its plant located at Indiana, Pennsylvania. A partial stipulation of facts, which we adopt, was filed by the parties, and additional testimony was taken at a hearing held on June 15, 1977. The stipulated facts and additional evidence may be summarized as follows:

Beckwith is a Delaware Corporation and is qualified to do business in Pennsylvania as a manufacturer and dealer in machinery and equipment. Its principal place of business is in Murraysville, Pennsylvania, with other locations throughout our Commonwealth. Beckwith is the franchise dealer for western Pennsylvania and the northern portion of West Virginia for Caterpillar Tractor Company. As such, Beckwith has the responsibility for selling new Caterpillar equipment and providing replacement parts and the necessary service to keep the equipment in operation.

The construction and operation of Beckwith's Indiana plant was the result of the gradual evolution of Caterpillar equipment as to size and complexity. Beckwith determined that it would be feasible and competitively to its advantage to provide a service where entire engines, transmissions, and torques could be replaced, rather than to make repairs or do maintenance on these items while they remained a part of the customer's machine.

When the Indiana facility obtains a piece of equipment, such as a diesel engine, which has been removed from a customer's Caterpillar tractor as a result of a replacement arrangement, it is first cleaned and completely disassembled. All of the useable component assemblies are reconditioned and new parts obtained, if required. The *same* engine is placed in an

assembly bay where a mixture of new parts, reconditioned parts, and still-useable parts are assembled, terminating in a reconditioned engine.[1]   Thereafter, the engine is painted, tested, packaged, and placed in Beckwith's inventory to await sale.

The reconstructed engine, transmission, or torque is the property of Beckwith and is guaranteed upon sale to the same extent as a new product.   Beckwith, at other locations, is also engaged in the repair business as to similar engines, transmissions, and torques which are returned to the owners after repairs are made.

The sole question involved in this appeal is whether the tools, equipment, and items necessary for the overhauling or reconditioning of engines, transmissions, and torques removed from Caterpillar construction equipment should be excluded from liability for use tax under the so-called manufacturing exclusion of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7101 et seq. (Act).   Section 201 (o)(4)(B)(i) of the Act, 72 P.S. §7201(o)(4)(B)(i), excludes from taxation tangible personal property used directly in manufacturing.   Section 201(c)(1) of the Act, 72 P.S. §7201(c)(1), defines the term "manufacture" as

> [t]he performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business which place any personal property in a form, composition or character different from that in which it is acquired whether for sale or use by the manu-

---

[1] We are not confronted in the instant case by a record which discloses that a new and different engine was built or constructed or even assembled from an assortment of parts. Nor are we presented a fact situation where the taxpayer acquires parts of various kinds and assembles them to form an engine.

facturer, and shall include, but not [be] limited to . . . [e]very operation commencing with the first production stage and ending with the completion of personal property having the physical qualities (including packaging, if any, passing to the ultimate consumer) which it has when transferred by the manufacturer to another.

The provision of the use tax law relating to manufacturing contains an exclusion from the payment of taxes rather than an exemption. *Commonwealth v. Olan Mills, Inc.,* 456 Pa. 78, 317 A.2d 592 (1974). As such, the provision must be strictly construed against the Commonwealth. *Commonwealth v. Sitkin's Junk Co.,* 412 Pa. 132, 194 A.2d 199 (1963).

In considering identical wording, as appears in the tax statute under consideration here, our Supreme Court, in *Commonwealth v. Sitkin's Junk Co., supra,* held that

[t]o constitute 'manufacture', *first,* the *type* of the activity must fall into one or more categories, i.e., 'manufacturing, fabricating, compounding, processing or other operations' and *second,* as a *result* of one or more types of the prescribed activities, the personal property must be placed 'in a form, composition or character *different* from that in which [such personal property]' was acquired. (Emphasis in original.)

412 Pa. at 138, 194 A.2d at 202.

Our analysis of the provisions of the Act and Beckwith's activities convinces us that, although this type of activities does fall within the statutory category of "other operations," the *result* of those activities does not place the personal property here in a form, composition or character different from that in which such personal property was acquired.

In the case at bar, Beckwith acquires engines, transmissions, and torques and, after it carries out its various activities, including disassembling, and reassembling, the result reached is engines, transmissions, and torques, albeit reconditioned and useable ones. Nevertheless, any given engine, transmission, or torque is in the same form, composition and character as it was when acquired by Beckwith.[2] Accordingly, Beckwith's activities and operations at its Indiana plant do not fall within the statutory definition of "manufacture" and are therefore not within the activities excluded from the operation of this tax statute.

Simply stated, there being no real difference in the form, composition, or character of the personal property when acquired from that of the personal property after reconditioning by Beckwith, there is insufficient basis to bring Beckwith's activities within the operation of the manufacturing exclusion of the

---

[2] Beckwith contends here that the instant case is controlled by *Commonwealth v. Goodyear Tire and Rubber Co.*, 88 Dauph. 301 (1967), in which the issue was whether or not the process of recapping tires was an excluded activity. In *Goodyear*, the Court of Common Pleas of Dauphin County relied on certain chemical changes in the vulcanization process as a basis for granting the tax relief. We distinguish that case from the instant record which we believe is devoid of any obvious changes in composition of the reconditioned engines, transmissions, or torques.

Likewise, the instant case is factually distinguishable from *Commonwealth v. Sitkin's Junk Co.*, *supra*, wherein our Supreme Court held that scrap, after and as a result of the handling and activities of the taxpayers, was in a form, composition, and character different from the scrap which had been acquired by the taxpayers. In *Sitkin*, the taxpayers sorted scrap into ferrous and nonferrous classifications and cut it to a convenient size; some scrap was classified according to chemical analysis to determine the amount of sulphur or phosphorous; some scrap, such as junked automobiles, was processed to remove unwanted nonmetallic parts or to destroy them by burning, and the metal remaining was compressed into a bale approximately 5 feet by 21 inches by 21 inches.

Act. The machinery in question is used directly in such activities, and the sale thereof to, and the use thereof by, Beckwith are taxable transactions within the purview of the Act.

## Conclusions of Law

1. The tools, equipment, and items, necessary for the overhauling or reconditioning of engines, transmissions, and torques, utilized by the Beckwith Machinery Company at its Indiana, Pennsylvania, facility are not used in manufacturing or encompassed by the term "manufacture" as that term is defined by Section 201(c)(1) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7201(c)(1).

2. The tools, equipment, and items, necessary for the overhauling or reconditioning of engines, transmissions, and torques, utilized by the Beckwith Machinery Company at its Indiana, Pennsylvania, facility are subject to the use tax imposed by the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 12 P.S. §7101 et seq.

3. The Board of Finance and Revenue did not err in reassessing a use tax in the amount of $12,791.71 for the period of April 1, 1972 through February 27, 1975 against Beckwith Machinery Company relative to the tools, equipment, and other items utilized at its Indiana, Pennsylvania, facility.

4. Judgment should be entered in favor of the Commonwealth of Pennsylvania and against Beckwith Machinery Company, in the amount of $44,717.63, in accord with the Notice of Reassessment of the Board of Finance and Revenue, that being the amount paid to the Commonwealth by Beckwith Machinery Company on March 14, 1977.

## Decree Nisi

And Now, this 28th day of April, 1978, the order of the Board of Finance and Revenue in the above-captioned case is affirmed, and judgment is directed to be entered in favor of the Commonwealth of Pennsylvania and against Beckwith Machinery Company, in the amount of $44,717.63, together with costs, unless exceptions be filed hereto within thirty (30) days. The said judgment, when entered, to be marked satisfied upon payment of costs only. The Prothonotary is directed to notify forthwith the parties hereto or their counsel of record of this decree.

Dissenting Opinion by Judge Rogers:

I respectfully dissent. Section 201(c)(1) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7201(c)(1), defines manufacturing, *inter alia*, as a process or operation which places personal property in a character different from that in which it was acquired. The Code excludes from use tax tangible personal property used in manufacturing as so defined. The question is whether the personal property used in the instant taxpayer's activity with respect to worn out tractor engines, transmissions and torques is an operation which gives those items different character. As the majority correctly points out, the provision, being an exclusion, must be strictly construed against the Commonwealth. The Commonwealth has not convinced me that an engine, transmission or torque which has been cleaned, disassembled, supplied with new parts, painted, tested, packaged and placed on the shelf for sale is an article of personal property of the same character as the engine, transmission, or torque whose senescence occasioned those ministrations.