116 Pa. Commonwealth Ct. 505 (1988)
542 A.2d 210
Beasley Industries, Inc., Petitioner
v.
Commonwealth of Pennsylvania, Respondent.
No. 1198 C.D. 1976.
Commonwealth Court of Pennsylvania.
Argued April 18, 1988.
June 2, 1988.
*506 Argued April 18, 1988, before Judges MacPHAIL and DOYLE, and Senior Judge NARICK, sitting as a panel of three.
Robert L. Weldon, Keefer, Wood, Allen & Rahal, for petitioner.
Bryan E. Barbin, Deputy Attorney General, with him, LeRoy S. Zimmerman, Attorney General, for respondent.
OPINION BY JUDGE MacPHAIL, June 2, 1988:
Beasley Industries, Inc. (Petitioner) appeals an order of the Board of Finance and Revenue denying Petitioner's appeal of a use tax reassessment. We affirm.
The Department of Revenue's Bureau of Sales and Use Tax conducted an audit of Petitioner for the period January 1, 1971 to June 30, 1974. As a result, Petitioner was issued a notice of assessment dated December 2, *507 1974, in the amount of $10,669.16.[1] According to the Department, use tax was assessed against Petitioner for purchases of machinery, equipment, tools and supplies used by Petitioner in its engine remanufacturing business, because of the auditor's determination that the work performed by Petitioner did not fall within the manufacturing exclusion from use tax contained in Section 201(o)(4)(B)(i) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, as amended, 72 P.S. §7201(o)(4)(B)(i).[2]
Petitioner appealed the assessment to the Department's Board of Review. On October 15, 1975, the Board issued a decision abating the assessed penalties, but otherwise sustaining the assessment, finding that Petitioner's "refurbishing operations" were not manufacturing within the meaning of the Code exclusion. As previously noted, Petitioner's appeal of this decision was denied by the Board of Finance and Revenue.
The sole issue before this Court is whether Petitioner's business constitutes "operations of . . . manufacture" within the meaning of Section 201(o)(4)(B)(i) of the Code. If Petitioner's operations do constitute manufacturing, use tax, otherwise chargeable under Section 202 of the Code, 72 P.S. §7202, should not be imposed on Petitioner's personal property.
Under Section 201(o)(4) of the Code, tax is not imposed on the use of tangible personal property directly in any of the operations of the manufacture of personal property. "Manufacture" is defined as:
The performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business, which place any *508 personal property in a form, composition or character different from that in which it is acquired for sale or use by the manufacturer. ...
Section 201(c) of the Code, 72 P.S. §7201(c). Keeping this statutory definition in mind, we will review the details of Petitioner's operations. According to the Stipulation of Facts entered into by Petitioner and the Respondent, Commonwealth of Pennsylvania,[3] Petitioner's business may be described as follows.
Petitioner obtains unusable internal combustion engine blocks from Ford dealers and disassembles them into approximately 100 separate component parts. Any severely damaged components, and certain other parts,[4] are discarded, and all usable components are sorted into bins of like parts. The previously-used parts are then cleaned to return them to their original, casting state, and are inspected for any defects.[5] After the cleaning process, it is necessary to re-bore and hone the surfaces of the cylinder walls within the engine block. The engine block is then cleaned again, and pressure tested with air to determine if it is usable. If usable, the engine block is assembled with new parts, purchased from Ford or other suppliers, or parts that have been salvaged by Petitioner, i.e., cleaned, repaired and *509 remachined where necessary. As stipulated, more than half of all component parts used by Petitioner in each engine are new. The assembled engine block is then painted and ready for sale.
Both Petitioner and the Ford Motor Company characterize Petitioner's operations, in advertising and warranty information, as "engine remanufacture" and the engines are referred to as "remanufactured Ford engines." The assembly of the engine and all parts used must meet Ford specifications, as set forth in a manual entitled "Ford Authorized Remanufacturing Specifications."
Petitioner argues here that its operations fall within the manufacturing exclusion because such operations result in a change in "form, composition or character" of personal property. Although we recognize that an exclusion from payment of a tax must be strictly construed against the Commonwealth when there is any reasonable doubt regarding the meaning of the statutory language, Ernest Renda Contracting Co. v. Commonwealth, 516 Pa. 325, 532 A.2d 416 (1987), we cannot accept Petitioner's argument.
We are guided in our disposition of this matter by our decision in Beckwith Machinery Co. v. Commonwealth, 35 Pa. Commonwealth Ct. 138, 385 A.2d 605 (1978), affd, 485 Pa. 337, 402 A.2d 661 (1979). Beckwith, a franchise dealer for the Caterpillar Tractor Company, provides a service whereby it replaces entire engines, transmissions, and torques, rather than making repairs while the components are part of the machinery. The operations were described by this Court as follows:
When the ... facility obtains a piece of equipment, such as a diesel engine, which has been removed from a customer's Caterpillar tractor as a result of a replacement arrangement, it is first cleaned and completely disassembled. *510 All of the useable component assemblies are reconditioned and new parts obtained, if required. The same engine is placed in an assembly bay where a mixture of new parts, reconditioned parts, and still-useable parts are assembled, terminating in a reconditioned engine. Thereafter, the engine is painted, tested, packaged, and placed in Beckwith's inventory to await sale.
Id. at 140-141, 385 A.2d at 607 (emphasis in original, footnote omitted). The Court noted that the situation in Beckwith was not one where "a new and different engine was built or constructed or even assembled from an assortment of parts," nor a situation "where the taxpayer acquires parts of various kinds and assembles them to form an engine." Id. at 141 n.1, 385 A.2d at 607 n.1.
We concluded, in Beckwith, that the operation at issue did not place the personal property (engines and other machinery) in a form, composition or character different from that which the personal property was acquired by Beckwith. Accordingly, we found that Beckwith's activities did not fall within the statutory definition of "manufacture" and so Beckwith was not to be excluded from use tax under Section 201(o)(4)(B)(i) of the Act, 72 P.S. §201(o)(4)(B)(i).
Petitioner claims that because Beckwith is factually distinguishable from the case before us, we must reach the opposite conclusion, i.e., that Petitioner's operations are manufacturing as set forth in the Code definition. We do not disagree with Petitioner that its operations are not identical to those in Beckwith. Petitioner, we recognize, does not tear down a single engine at a time and rebuild and recondition that particular engine. Although Beckwith may be distinguishable, however, we decline to conclude that Petitioner's operations qualify *511 for the manufacturing exclusion merely because Beckwith is not factually controlling.
We conclude that Petitioner's operations do not constitute "manufacture" as that term is defined in Section 201(c)(1) of the Code, 72 P.S. §201(c)(1), because there is no change in form, composition or character of Petitioner's personal property. As indicated in the definition of manufacture contained in Department regulations, "[t]he change in form, composition, or character shall result in a different product having a distinctive name, character, and use." 61 Pa. Code §32.1. This Court, in interpreting both the statutory definition and that included in the regulation, has stated that "before manufacturing can be determined to have existed, the process at issue must involve more than `merely a superficial change.'" Marweg v. Commonwealth, 99 Pa. Commonwealth Ct. 282, 285, 513 A.2d 525, 527 (1986), citing Van Bennett Food Co. v. City of Reading, 87 Pa. Commonwealth Ct. 30, 34, 486 A.2d 1025, 1027 (1985).
Despite Petitioner's assertion that it only acquires unusable engines for use as raw material in the form of component parts and that these components are changed in form, composition or character when they are assembled into a remanufactured engine, we do not believe the remanufactured engine has a distinctive name, character, or use to bring Petitioner's operations within the statutory definition of manufacturing. As the Commonwealth argues, Petitioner starts with an unusable engine of a specified size and shape and ends with a usable engine of the same specified size and shape.
We, therefore, extend the conclusion previously reached in Beckwith to the instant situation where an engine is "remanufactured" from new and used component parts into the same type of engine from which the used components were taken and for which the new *512 components were originally manufactured. Accordingly, we hold that Petitioner's operations are not entitled to the "manufacturing exclusion" from use tax.
Order affirmed.

ORDER
The order of the Board of Finance and Revenue in the above-captioned matter is hereby affirmed.
Unless exceptions are filed within thirty (30) days in accord with the provisions of Pa. R.A.P. 1571(i), judgment shall be entered on praecipe of either party.
NOTES
[1] This amount included use tax of $7,878.49; interest of $889.65; and penalties of $1,901.02.
[2] See Stipulation of Fact (S.F.) 5; "Narrative Report of Audit Findings," Exhibit A.
[3] Such a stipulation of facts, authorized in appeals of this nature by Pa. R.A.P. 1571(f), is binding on both the parties and this Court, and facts effectively stipulated are controlling and conclusive. W. N. Dambach, Inc. v. Commonwealth, 87 Pa. Commonwealth Ct. 618, 488 A.2d 96 (1985).
[4] The components that are always discarded are: pistons, piston rings, cam shaft bearings, crank shaft bearings, head gaskets, valve stem seals, oil galley plugs and frost plugs. S.F. 21. Also, valves are discarded about fifty percent of the time, and cam shafts are often discarded. S.F. 22.
[5] The cleaning process entails heating the parts to remove all oil and hydrocarbons, and then shot-blasting the parts to remove rust, paint and loose metal.