Richard L. & Audrey M.
TYSON, Petitioners,

v.

COMMONWEALTH of Pennsylvania,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1996.
Decided Oct. 29, 1996.

Donald M. Lewis, III, Harrisburg, for Petitioner.

Ronald H. Skubecz, Senior Deputy Attorney General, for Respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and KELTON, Senior Judge.

FRIEDMAN, Judge.

Richard L. and Audrey M. Tyson, husband and wife, (the Tysons) appeal from an order of the Board of Finance and Revenue (Board) which upheld the decision of the Department of Revenue Board of Appeals sustaining a realty transfer tax assessment against the Tysons in the amount of $106,-009.70, plus interest. The tax was assessed pursuant to section 1102–C of Article XI–C of the Tax Reform Code of 1971 (Realty Transfer Tax Act or Act)[1] as a result of the recording of a deed on December 27, 1991.

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 8102–C, which provides in pertinent part:

Every person who makes, executes, delivers, accepts or presents for recording any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect to the transaction ... a State tax at the rate of one per cent of the value of the real estate represented by such document, ....

The parties have stipulated to the following facts.[2] In late 1989, Tim Tyson, the Tysons' son, entered discussions with North American Logistic Services, a division of Mars, Incorporated (Mars), regarding the construction and operation of a warehouse and distribution facility for Mars products to be located in Lancaster County. Tim informed his parents, who then held discussions with both Tim and the Tysons' daughter, Terri Tyson, during which it was agreed that the facility should be built, owned and operated by a family partnership.

Following further family discussions, it was decided to proceed with the acquisition of the property and the development and construction of the facility, with Tim Tyson in charge of project completion. In the spring of 1990, the Tyson family met with their lawyers and accountant to discuss formation of the family partnership to own and operate the Mars facility. In June 1990, the family formed T.R.G. & Company (T.R.G.), a Minnesota general partnership composed of the Tysons and their children; the partnership was created by oral agreement, pursuant to which each family member had a partnership interest in a partnership engaged in the business of acquiring and operating the Mars warehouse project. A written partnership agreement was entered into in 1991.

In order to simplify the process of obtaining necessary permits, government approvals, financing and property leasing agreements, the family members agreed that, initially, the Tysons would obtain title to the property on behalf of T.R.G.[3] On July 16, 1990, the Tysons acquired title to the property in their individual names, with the intent to purchase the property as part-

ners of T.R.G.; however, neither the July 16, 1990 deed nor the Statement of Value filed with it referred to T.R.G. as the beneficial owner. The realty transfer tax was paid at that time.

On December 27, 1991, the Tysons formally conveyed the subject real estate and improvements to T.R.G. for an actual cash consideration of one dollar ($1.00). On the Statement of Value form submitted with the December 27, 1991 deed, the Tysons claimed that the December 27, 1991 conveyance was excluded from the 1% state realty transfer tax pursuant to section 1102–C.3 of the Realty Transfer Tax Act, 72 P.S. § 8102–C.3, explaining the claimed exemption as a "transfer from Richard L. Tyson & Audrey M. Tyson, husband and wife and Mother and Father to a general partnership consisting of Richard L. Tyson and Audrey M. Tyson and their children." (Stipulation of Facts, Exhibit E.) However, on March 6, 1992, the Department of Revenue, Bureau of Individual Taxes, issued a notice of determination of realty transfer tax against the Tysons in the amount of $106,009.70, plus interest, indicating that "transfers to or between corporations or partnerships are fully taxable." (Stipulation of Facts, Exhibit A.) The Board of Appeals sustained this determination and, on further appeal, the Board upheld the action of the Board of Appeals.

On appeal to this court, the Tysons acknowledge that while, pursuant to section 1102–C.4 of the Realty Transfer Tax Act, transfers between partners and their partnerships are otherwise fully taxable, the regulations of the Department of Revenue recognize that such transfers are subject to

---

**2.** On January 26, 1996, this court issued a Rule to Show Cause against the Tysons as to why this action should not be dismissed for want of prosecution. The Rule was discharged by order dated February 29, 1996 providing that, within 120 days, the Tysons should file a detailed status report on the case specifying the efforts extended to resolve the matter by stipulation of fact or stipulation for judgment. In the status report, the Tysons indicated that, although efforts to settle the case did not succeed, the parties had entered into a joint stipulation of facts for purposes of review before this court, in accordance with Pa.R.A.P. 1571(f).

**3.** The family was under pressure from Mars to move quickly with the construction of the facility; thus, for speed and simplicity, the family decided to use the Tysons' individual names in various zoning, licensing and financial documents to avoid the need for all the family members to sign off on the documents. However, the Tysons always understood and intended that their actions were on behalf of T.R.G., an intent that was established by contemporary communications to Mars and to the bank which loaned the money for the project.

certain exclusions contained in section 1102–C.3 of the Act. Section 1102–C.4 provides:

*Except as otherwise provided in section 1102–C.3,* documents which make, confirm or evidence any transfer or devise of title to real estate between associations[4] or corporations and the members, partners, shareholders or stockholders thereof are fully taxable. For the purposes of this article, corporations and associations are entities separate from their members, partners, stockholders or shareholders.

72 P.S. § 8102–C.4 (emphasis added). The Tysons argue that the December 27, 1991 transfer of real estate by the Tysons to T.R.G. (transaction) is excluded from the realty transfer tax under one of the section 1102–C.3 exclusions, specifically section 1102–C.3(11), 72 P.S. § 8102–C.3(11),[5] which provides that the tax imposed by section 1102–C of the Realty Transfer Tax Act shall not be imposed upon:

(11) A transfer:

(i) for no or nominal consideration between principal and agent or straw party; or

(ii) from or to an agent or straw party where, if the agent or straw party were his principal, no tax would be imposed under this article.

Where the document by which title is acquired by a grantee or statement of value fails to set forth that the property was acquired by the grantee from, or for the benefit of, his principal, there is a rebuttable presumption that the property is the property of the grantee in his individual capacity if the grantee claims an exemption from taxation under this clause.

72 P.S. § 8102–C.3(11). The Tysons maintain that, because they originally purchased the subject property as agents for T.R.G. and thereafter conveyed the property to T.R.G. for nominal consideration, they have rebutted the presumption and no realty transfer tax is due on the transaction.

■ As a threshold matter, however, we must consider the Commonwealth's contention that we should not address the Tyson's section 1102–C.3(11) argument because they failed to raise this principal/agent theory of exclusion before the Board or preserve it in their Petition for Review to this court. The Commonwealth maintains that, because the Tysons originally sought relief from the realty transfer tax based on the intra-family exclusion set forth in section 1102–C.3(6) of the Realty Transfer Tax Act, 72 P.S. § 8102–C.3(6),[6] and only put forward the princi-

---

**4.** The Act defines "association" as a partnership, limited partnership, or any other form of unincorporated enterprise, owned and conducted by two or more persons other than a private trust or decedent's estate. 72 P.S. § 8101–C.

**5.** Alternatively, the Tysons argue that the December 27, 1991 deed should be construed as a corrective deed that merely confirmed the transfer recorded on July 16, 1990 when the Tysons acquired the property on behalf of T.R.G.. On that basis, the Tysons contend that the transaction is excluded from the realty transfer tax under section 1102–C.3(4) of the Realty Transfer Tax Act, which excludes from taxation a "transfer for no or nominal actual consideration which corrects or confirms a transfer previously recorded, but which does not extend or limit existing record legal title or interest." 72 P.S. § 8102–C.3(4). Because we conclude that the transaction is excluded from the realty transfer tax under section 1102–C.3(11) of the Realty Transfer Tax Act, we do not consider this alternative basis for the exclusion.

**6.** This section provides, *inter alia,* that no realty transfer tax shall be imposed upon transfers be-

tween parent and child. 72 P.S. § 8102–C.3(6). The Board disagreed that this intra-family exclusion applied to the transaction here, determining that the words "except as otherwise provided in section 1102–C.3" must be construed as pertaining only to those section 1102–C.3 exclusions which are applicable to statutory mergers or transfers between a corporation or association and its shareholders or members. (Board decision at 3–2.) In their Petition for Review to this court, the Tysons challenged the Board's determination as excessively narrow and contrary to the plain meaning of section 1102–C.4, asserting that the phrase "except as otherwise provided in section 1102–C.3" in that provision does not single out any of the 22 enumerated section 1102–C.3 exclusions but, rather cites the entire section generally, including the exclusion dealing with transfers between parent and child. (Petition for Review, paras. 10a.–10h.) However, we have subsequently considered and dismissed this precise argument in *Kushner v. Commonwealth,* 160 Pa.Cmwlth. 244, 634 A.2d 786 (1993), holding that the intra-family exemption from the realty transfer tax, 72 P.S. § 8102–C.3(6), did not apply to the conveyance of property from two brothers to a partnership whose sole partners were the brothers themselves.

pal/agent exclusion of section 1102–C.3(11) for the first time in their brief to this court, the latter issue is beyond our scope of review. *See,* Pa.R.A.P. 1571(h); *J.L. Turner Co., v. Commonwealth,* 41 Pa.Cmwlth. 146, 399 A.2d 433 (1979); *House of Pasta, Inc., v. Commonwealth,* 37 Pa.Cmwlth. 317, 390 A.2d 341 (1978).

Tax appeals from the Board are governed by the special procedures established by Rule 1571 of the Rules of Appellate Procedure. The Commonwealth relies on subdivision (h) of Rule 1571, which deals with scope of review and provides:

> (h) Scope of review. Rule 1551(a) (review of quasi-judicial orders) shall be applicable to review of a determination of the Board of Finance and Revenue except that:
>
> (1) A question will be heard and considered by the court if it was raised at any stage of the proceedings below and thereafter preserved.
>
> (2) To the extent provided by the applicable law questions raised by the petition for review shall be determined on the record made before the court. See Subdivision (f) of this rule. [Relating to preparation of a stipulation of facts by the parties.]

Pa.R.A.P. § 1571(h).

The Commonwealth also points to the note to Rule 1571, which includes the following statement concerning the amount of detail required in the pleadings (emphasis added):

> The basis of jurisdiction of the court under this rule will ordinarily be 42 P.S. § 763 (direct appeals from government agencies). Subdivision (c) [of Rule 1571] is not intended to change the practice in connection with the review of orders of the Board of Finance and Revenue insofar as the amount of detail in the pleadings is concerned. What is required is that the peti-

tioner raise every legal issue in the petition for review which the petitioner wishes the court to consider. The legal issues raised need only be specific enough to apprise the respondent of the legal issues being contested (*e.g. 'valuation,' 'manufacturing,' 'sale for resale,' etc.*)

According to the Commonwealth, the three examples given in this note, i.e., valuation, manufacturing and sale for resale, represent discrete categories of exclusion from the sales and use tax imposed pursuant to Article II of the Tax Reform Code, 72 P.S. §§ 7201–7282, and, as such, are the counterpart to the exclusions from the realty transfer tax included in section 1102–C.3 of the Act. Therefore, the Commonwealth reasons that, to comply with the specificity requirement of Rule 1571, the Tysons must explicitly state in their Petition for Review on which of the Act's twenty-two (22) exclusions they wish to rely. In this case, the Commonwealth points out, the specific exclusions referred to in the Tysons' Petition for Review are the intra-family transfer exclusion, 72 P.S. § 8102–C.3(6), and the corrective deed exclusion, 72 P.S. § 8102–C.3(4); on the other hand, the principal/agent exclusion, 72 P.S. § 8102–C.3(11), is not specifically mentioned and, thus, cannot be considered.

However, the Tysons argue that, contrary to the suggestion by the Commonwealth, objections stated in a petition under Rule 1571 need not specifically track the exclusions set forth in the applicable statute, in this case 72 P.S. § 8102–C.3.[7] Rather, under Rule 1571(c), a petition for review need only contain a "general statement" of the petitioner's objections to the Board's determination and does not require that a specific exclusion be cited.[8]

---

**7.** In this regard, we agree with the Tysons that the examples given in the note to Rule 1571 are not sufficiently precise to identify the particular exclusions from the sales and use tax, which are set forth in section 204 of the Tax Reform Code, 72 P.S. § 7204.

**8.** The Tysons also contend that, even if we doubt that our scope of review includes the principal/agent theory of exclusion, we should nevertheless address that issue for the sake of judicial economy. To support this argument, the Tysons

claim that they have the option of paying the disputed tax and instituting a refund claim, as did the taxpayer in *Armco, Inc. v. Commonwealth,* 654 A.2d 1191 (Pa.Cmwlth.1993), resulting in a delay in resolving the question whether the principal/agent exclusion applies which would benefit no one. However, because the Tysons would not have an opportunity to claim a refund after paying the tax, *see* section 1113–C of the Realty Transfer Tax Act, 72 P.S. § 8113–C (authorizing the department to decide applications for refunds *where there has been no determi-*

Admittedly, the Tysons' Petition for Review specifies the intra-family exclusion to the realty transfer tax; however, the Petition for Review also contains the following statements asserting that the transaction is generally exempt from the tax:

> 10.d. Section 1102–C.3 of the [Realty Transfer Tax Act] has the effect of imposing real estate transfer tax upon transfers to partnerships and corporations, except in cases where the exceptions apply (*whatever those exceptions may properly be* ). Although statutes that exclude or exempt property from taxation are strictly construed, statutes imposing taxes are to be read in favor of the taxpayer, to be liberally construed to affect their objects and to promote justice, 1 Pa.C.S.A. Section 1928.
>
> 10.g. At all times material, the intention of [the Tysons] was to convey the premises from themselves to themselves and their five children in a transfer that was not subject to real estate transfer tax.

(Petition for Review, paras. 10d., 10g.) (Emphasis added.)

Although we cannot deny that it would have been preferable for the Tysons to have specified a section 1102–C.3(11) exclusion in their Petition for Review, the fact that they did not do so does not prevent us from considering the issue, particularly where the Commonwealth has fully briefed the merits of the issue for this court's *de novo* review.[9] We note that throughout the proceedings below as well as in the Petition for Review filed with this court, the Tysons always have maintained that the transaction was excluded from the realty transfer tax. Here, too, the Commonwealth and the Tysons executed a joint stipulation of facts that unmistakably raised the question whether the principal/agent exclusion applied. (*See, e.g.,* Stipu-

lation of Facts, paras. 15, 20, 23, 25, 31.) Through this stipulation, the Commonwealth acknowledged that, due to time pressures, T.R.G.'s acquisition of the subject property had to be done in two phases; in July 1990, the Tysons purchased the property on behalf of the family partnership and, in December 1991, the Tysons completed the transaction by formally conveying the property to T.R.G. for one dollar. (*See* Stipulation of Facts, paras. 23–25, 28–31.) Because realty transfer tax was paid on the original purchase, it is clear that, here, the Tysons are not trying to avoid paying the tax altogether; rather, the Tysons and T.R.G. merely seek to avoid double taxation on a two-step transfer which, were it not for unfortunate circumstances, could easily have been accomplished in a single transaction requiring a single tax payment. In light of the unique circumstances of this case, we believe that, despite the Tysons' general claim of exclusion under section 1102–C.3 of the Act, the Commonwealth was fairly apprised of the Tysons' claim to an exclusion under subsection 1102–C.3(11). To conclude otherwise would be to place the niceties of pleading above equitable principles, and we decline to do so.

 Accordingly, we now consider whether the subject transaction falls within the principal/agent exclusion of the Realty Transfer Tax Act. In this regard, the Tysons concede that, because no principal/agent relationship between the Tysons and T.R.G. was disclosed on the deed when the Tysons originally acquired the property on July 16, 1990, they must overcome the rebuttable presumption that the property was acquired by them in their individual capacities only, rather than as agents of T.R.G., if they are to establish that the subsequent transaction is exempt from the realty transfer tax. 72 P.S. § 8102–C.3(11).[10] However, the Tysons ar-

---

*nation of unpaid tax* ), this argument is without merit.

**9.** Appeals to this court from a Board decision are considered *de novo,* with our ruling based upon the record created before this court or on the stipulation of facts made by the parties. Thus, although this court hears appeals from Board decisions in our appellate jurisdiction, we function essentially as a trial court in resolving tax appeals. Pa.R.A.P. 1571; *Norris v. Common-*

*wealth,* 155 Pa.Cmwlth. 423, 625 A.2d 179 (1993).

**10.** In this regard, the Tysons note that the Act does not state what type or quantum of evidence is required to rebut the presumption in 72 P.S. § 8102–C.3(11). However, they point out that every tax statute must be construed strictly against the Commonwealth, and any reasonable doubts as to its construction or its application to a particular case must be resolved in favor of the taxpayer. 1 Pa.C.S. § 1928(b)(3); *Leigh v. Com-*

gue that, through the stipulated facts which form the record in this case, they successfully rebut the statutory presumption and demonstrate that the transaction qualifies for the section 1102–C.3(11) exclusion. We agree.

 The Stipulation of Facts clearly establishes that the family partnership existed at the time of the initial acquisition, that the Tysons were agents of the partnership, that they acted within the scope of the partnership's business, that they purchased the property on behalf of the partnership, and that they conveyed it to the partnership for nominal consideration. Being bound by these facts,[11] we necessarily conclude that, notwithstanding the presumption to the contrary, the Tysons have established that the transaction falls within the section 1102–C.3(11) exclusion of the Realty Transfer Tax Act. Accordingly, because no tax is due on the transaction, we vacate the Board's decision and issue the following order.

### ORDER

AND NOW, this 29th day of October, 1996, the determination of the Commonwealth of Pennsylvania, Board of Finance and Review, is hereby vacated. Judgment is entered in favor of the Tysons, and will become final unless exceptions are filed within thirty days of the entry of this order pursuant to Pa. R.A.P. 1571(i).

---

*monwealth,* 168 Pa.Cmwlth. 12, 648 A.2d 1346 (1994), *aff'd,* 541 Pa. 187, 661 A.2d 1374 (1995); *Pa. Builders Ass'n v. Department of Revenue,* 122 Pa.Cmwlth. 493, 552 A.2d 730 (1989), *aff'd,* 524 Pa. 134, 569 A.2d 928 (1990). As a necessary corollary of the rule of strict construction, it is well established that double taxation must not be imputed as the intent of the legislature without express language clearly showing such intent. *Estate of Rose,* 465 Pa. 53, 348 A.2d 113 (1975).

Given this rule of strict construction, the Tysons maintain that the court should apply the least stringent of the tests used to rebut a presumption.

11. The stipulation of facts is binding on both the parties and on this court, and facts effectively stipulated are controlling and conclusive. *Beasley Industries, Inc. v. Commonwealth,* 116 Pa. Cmwlth. 505, 542 A.2d 210 (1988).