J-S14025-20
J-S14026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DEFOREST JOHNSON | : | |
| | : | |
| Appellant | : | No. 1990 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 14, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007419-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DEFOREST JOHNSON | : | |
| | : | |
| Appellant | : | No. 1991 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 14, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007423-2016

BEFORE: BOWES, J., KING, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KING, J.: **FILED JUNE 9, 2020**

Appellant, Deforest Johnson, appeals *nunc pro tunc* from the judgments

of sentence entered in the Philadelphia County Court of Common Pleas,

following his consolidated jury trial convictions for second-degree murder, two

counts each of kidnapping and robbery, and related offenses.[1]  We affirm.

The relevant facts and procedural history of these appeals are as follows.

Ken Thomas, a cooperating codefendant, testified that he lives in North Philadelphia and was friends with all of the codefendants in this case.  Thomas knew Brandon McKelvey as "SK" since they were children.  They grew up together in the Strawberry Mansion neighborhood of Philadelphia.  Thomas knew Christopher Corley as "C" since approximately 2008-2009.  They lived in the same neighborhood.  Thomas knew Nysare Alston as "NA" since 2014.  **Thomas knew [Appellant] as "Big Huss."**  Thomas testified that Nysare Alston was the only codefendant, out of the group, who knew the decedent.

Thomas admitted that he was involved in the kidnapping, robbery, and murder of the decedent and the attempted murder of Ryan Hardy on April 17, 2014, along with his codefendants.

Thomas testified that it was Alston's idea to kidnap and rob the decedent for money and drugs and that all five of them agreed that it was a great idea.  The group also planned to get the decedent's "connect."[10]  Thomas testified that:

[T]he plan was if we got an abandoned house, we was going to take them to the abandoned house.  We was going to interrogate them, get information out of them, see if we can get his connect.  And if we can get his connect, bring his connect there and do whatever we got to do to get whatever we need from his connect.

The group planned to torture the decedent, to get information about his "connect," once they had him in the abandoned house.  Ultimately, it was decided that the decedent would have to be killed so he wouldn't retaliate.

[10] "Connect" referred to the person that supplied the decedent, a cocaine dealer, with cocaine.  The five of

---

[1] 18 Pa.C.S.A. §§ 2502(b), 2901(a)(1), 3701(a)(1)(i), respectively.

them wanted to get the decedent to call his supplier so that they could rob the supplier of drugs and money as well.

Thomas testified that he met up with McKelvey, Corley, and [Appellant] at a hardware store at 29th and Dauphin Streets in Strawberry Mansion on the morning of the incident. The four men purchased duct tape and saran wrap for the purpose of tying up the decedent. The four then went to Alston's house. Thomas was driving his Grand Prix followed by McKelvey, Corley, and [Appellant] in a big, green van owned by [Appellant].

Alston met the others at the van, and the group discussed their plan, outside of Alston's house on Queen Lane. Alston planned to invite the decedent over to his house under the guise of purchasing drugs from him. He would ask the decedent to park his vehicle in the rear driveway. Thomas would block the decedent's vehicle in the driveway with his Grand Prix. The other men would grab the decedent from his car and place him into [Appellant's] van.

The group initiated the plan, but as they were waiting for the decedent to arrive, Alston's stepfather told Alston that his friends had to remove the van from the driveway. The van exited the driveway and began circling the block. The decedent arrived, and instead of pulling into the driveway, parked his Camaro on Knox Street, which was on the side of Alston's house. Thomas saw the decedent standing on the corner talking on the phone.

The van pulled next to the decedent's vehicle and Thomas' Grand Prix pulled behind it. McKelvey, Thomas, Corley, and [Appellant] exited their respective vehicles. Thomas and [Appellant], at point of gun, grabbed the decedent and shoved him into the van. Unbeknownst to the group, another male, Ryan Hardy, had accompanied the decedent and was seated in the decedent's vehicle. Thomas and McKelvey, at point of gun, grabbed Hardy out the decedent's vehicle and shoved him into the van as well.

(Trial Court Opinion, filed September 16, 2019, at 3-4) (internal citations omitted) (emphasis added).

Mr. Thomas and Mr. Alston stole drugs and jewelry from the decedent's vehicle. Mr. Thomas and Mr. Alston also took the decedent's keys, went to the decedent's home, and stole cocaine and a television set. Meanwhile, the kidnappers drove around in the van with the decedent and Mr. Hardy. During that time, the kidnappers took the victims' cell phones and wallets and tortured them, cutting their wrists and necks. After a few hours, the kidnappers threw the decedent and Mr. Hardy out of the van and shot them. The decedent died as a result of his injuries, but Mr. Hardy survived.

At docket no. CP-51-CR-0007419-2016 ("docket 7419-2016"), the Commonwealth charged Appellant with offenses related to the decedent. At docket no. CP-51-CR-0007423-2016 ("docket 7423-2016"), the Commonwealth charged Appellant with offenses related to Mr. Hardy, including attempted murder and aggravated assault.[2] On September 2, 2016, the Commonwealth provided notice of joint trial, notifying Appellant of its intention to try him together with Mr. Alston, Mr. McKelvey, and Mr. Corley.[3] Appellant responded by filing a motion for separate trial, which the court granted on November 1, 2017.

Appellant's consolidated jury trial for both bills of information

---

[2] 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), respectively.

[3] On January 11, 2016, Mr. Thomas entered an open guilty plea to murder, conspiracy to commit murder, conspiracy to commit robbery, attempted murder, kidnapping, robbery, and violations of the Uniform Firearms Act. *See* N.T. Trial, 5/9/18, at 159-62.

- 4 -

commenced on May 7, 2018. On May 10, 2018, the Commonwealth rested

and Appellant called his first witness, Aaron Smith.

> [Mr. Smith was] a jailhouse informant, who previously testified on behalf of the Commonwealth against the codefendants in a separate trial. During Smith's prior testimony, he stated that McKelvey had confessed committing the murder and named his codefendants. Smith did not mention [Appellant]. At [Appellant's] trial, the Commonwealth did not call Smith but was aware that the defense intended to call him as [a] witness. [Appellant] called Smith at trial and elicited the same testimony as his prior testimony. However, the following exchange occurred during the Commonwealth's cross-examination of Smith:
>
> ADA [BOYLE[4]]: Did Brandon McKelvey tell you about an individual that did do the murder with him that owned a van?
>
> SMITH: Yes.
>
> ADA [BOYLE]: Tell us about that.
>
> SMITH: He said it was a green van and—and, basically, it was this individual's van.
>
> ADA [BOYLE]: He said that the green van belonged to who?
>
> SMITH: One of the guys. He said Big Homie or something.
>
> ADA [BOYLE]: He called him "Big Homie"?
>
> SMITH: Yeah.
>
> ADA [BOYLE]: Do you remember him saying "Big Huss"?

---

[4] At trial, Assistant District Attorney ("ADA") Boyle and ADA Krouse appeared on behalf of the Commonwealth.

SMITH:          Yes.

ADA [BOYLE]:    Is that what he said?

SMITH:          Yes.

ADA [BOYLE]:    So did Brandon McKelvey tell you that Big Huss, the owner of the van, was somebody who did the murder with him?

SMITH:          Yes.

The defense thereafter impeached Smith with his [pretrial] statement, which had no mention of "Big Homie" or "Big Huss." Afterward, the following exchange occurred:

COUNSEL:  Have you spoken to the DA since the last time you testified?

SMITH:     Since when?

COUNSEL:  Since the last time you testified.

SMITH:     Yes.

COUNSEL:  When did you speak to the DA after you testified?

SMITH:     After I testified?

COUNSEL:  Yeah.  You testified in this matter back on November 13, 2017.  Did you speak to the DA after that?

SMITH:     Yes.

COUNSEL:  And did you tell them what you've told— did you tell the DA what you've told the jury here? Did you tell them that, that Big Homie was involved? Did you tell the DA that when you spoke to them?

SMITH:     Yes.  I told them before.

COUNSEL:  When did you tell them?

> SMITH: I don't know the date.
>
> COUNSEL: But it was after you testified; you're sure about that?
>
> SMITH: No. No. It wasn't after I testified.
>
> COUNSEL: Okay. But you remember telling the DA about Big Homie. That was your testimony, correct?
>
> SMITH: Yes.

> During a sidebar, the defense moved for a mistrial claiming that the Commonwealth knew the defense was going to call Smith as a witness and did not disclose this newfound inculpatory evidence against [Appellant]. [ADA] Boyle confirmed that she had talked to Smith since he last testified. ADA Boyle informed the [c]ourt that Smith had never told her about "Big Homie" and she was confused as to whether he mentioned "Big Huss." However, ADA Krouse informed the [c]ourt that he had been present every time ADA Boyle had spoken to Smith, and ADA Krouse had no recollection of Smith ever mentioning "Big Homie" or "Big Huss."

(Trial Court Opinion at 15-16).

The court denied Appellant's mistrial motion. Thereafter, the parties entered into the following stipulation:

> Ladies and gentlemen, Aaron Smith just testified that he had told the district attorney that Big Homie or Big Huss was involved in this incident. There's been a stipulation by and between the defense and the District Attorney's Office that at no time did Aaron Smith ever tell the District Attorney's Office or any police official that a Big Homie or a Big Huss was involved in this incident.

(N.T. Trial, 5/10/18, at 243).

On May 14, 2018, the jury found Appellant guilty of second degree

murder, two counts each of kidnapping and robbery, and related offenses. That same day, the court imposed a sentence of life imprisonment without parole for the murder conviction. Appellant did not file post-sentence motions or notices of appeal. Appellant subsequently sought reinstatement of his direct appeal rights *nunc pro tunc* at both Court of Common Pleas docket numbers, which the court granted on June 27, 2019.

On July 1, 2019, Appellant timely filed separate notices of appeal *nunc pro tunc* at dockets 7419-2016 and 7423-2016. This Court docketed each appeal separately. On September 25, 2019, Appellant filed an application requesting permission to file a single appellate brief. Appellant explained "the issues to be raised under both … Docket Numbers [are] identical, can be addressed in a single brief, and that permitting Appellant to include both … Docket Numbers in the caption of the cover sheet of Appellant's brief would serve the interests of judicial economy and the parties herein." (Application for Relief, filed 9/25/19, at 1-2). This Court granted Appellant's application on October 15, 2019.

Appellant now raises one issue for our review:

> DID THE TRIAL COURT COMMIT AN ABUSE OF DISCRETION
> BY DENYING APPELLANT'S MOTION FOR A MISTRIAL?

(Appellant's Brief at 3).

Appellant argues the Commonwealth conducted a pretrial interview with the defense witness, Mr. Smith, at which time Mr. Smith indicated he could implicate Appellant in the crimes at issue. Appellant asserts the

Commonwealth's deliberate failure to disclose Mr. Smith's inculpatory statements constituted a discovery violation, resulted in a trial by ambush, and deprived Appellant of his due process rights.[5] Appellant insists the court should have granted a mistrial on this basis. Further, Appellant maintains the court's denial of his motion for mistrial cannot be deemed harmless error, and "no cautionary instruction could have cured the harm caused by the prosecutor's underhanded tactic of withholding the inculpatory information Smith gave her about Appellant." (Appellant's Brief at 47). Appellant concludes the court abused its discretion by denying his motion for mistrial, and he is entitled to a new trial. We disagree.

Our standard of review of a court's denial of a motion for mistrial is as follows:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. **In making its**

---

[5] To support his assertion that the Commonwealth knew of Mr. Smith's inculpatory statements prior to trial, Appellant relies on the fact that ADA Boyle "immediately zeroed in" on Mr. Smith with a line of questions about Appellant. (Appellant's Brief at 30). ADA Boyle also "corrected" Mr. Smith when he said "Big Homie" instead of "Big Huss." (*Id.*). Finally, Appellant emphasizes the following statement from ADA Boyle at sidebar: "He told me Big Huss last time before the judge even asked—." (*Id.*)

**determination, the court must discern whether misconduct or prejudicial error actually occurred**, and if so, ... assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with the law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Tucker*, 143 A.3d 955, 961 (Pa.Super. 2016), *appeal denied*, 641 Pa. 63, 165 A.3d 895 (2017) (emphasis added).

Pennsylvania Rule of Criminal Procedure 573 provides in pertinent part:

**Rule 573. Pretrial Discovery and Inspection**

\* \* \*

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

\* \* \*

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made that is **in the possession or control of the attorney for the Commonwealth**;

Pa.R.Crim.P. 573(B)(1)(b) (emphasis added). "The purpose of the discovery rules is to permit the parties in a criminal matter to be prepared for trial. Trial

- 10 -

by ambush is contrary to the spirit and letter of those rules and cannot be condoned." ***Commonwealth v. Manchas***, 633 A.2d 618, 625 (Pa.Super. 1993), *appeal denied*, 539 Pa. 647, 651 A.2d 535 (1994).

"[A]n appellant's due process rights are violated and his right to a fair trial infringed whenever he is not given all of the discoverable material evidence in advance of trial[.]" ***Commonwealth v. Hanford***, 937 A.2d 1094, 1101 (Pa.Super. 2007), *appeal denied*, 598 Pa. 763, 956 A.2d 432 (2008). "Our cases have made it clear that, as a matter of due process, it is error to fail to provide evidence that will be used to impeach the credibility of defense witnesses." ***Commonwealth v. Ulen***, 539 Pa. 51, 56, 650 A.2d 416, 418 (1994).

Instantly, on cross-examination, Mr. Smith testified that Appellant's codefendant, Brandon McKelvey, told him that Big Homie was involved in the kidnapping and murder. ***See*** N.T. Trial, 5/10/18, at 217-18. ADA Boyle asked whether Mr. McKelvey actually said Big Huss, and Mr. Smith agreed that was the name he had heard. On redirect, defense counsel confronted Mr. Smith with his prior statement, which did not mention Big Homie.[6] ***Id.*** at 221. Mr. Smith conceded his statement did not mention Big Homie, but he insisted that he told the Commonwealth about Big Homie's involvement prior to trial. ***Id.*** at 224-25.

---

[6] On redirect, defense counsel did not use the nickname Big Huss. Rather, he only referred to Big Homie. ***See*** N.T. Trial, 5/10/18, at 221, 224, 225.

At that point, defense counsel requested a sidebar and moved for a mistrial. During the sidebar, ADA Krouse stated that Mr. Smith never mentioned Big Homie or Big Huss at any of their meetings. *Id.* at 232. Although ADA Boyle could not "say 100 percent that [Mr. Smith] didn't say Big Huss," she emphasized that ADA Krouse was with her "every single time we've spoke to Aaron Smith." *Id.* at 232, 238. The court denied Appellant's motion for mistrial, and it specifically found the Commonwealth's representations to be credible. *See* Trial Court Opinion at 17. In light of the court's finding, which is supported by the record, we cannot agree with Appellant's argument that the Commonwealth actually committed a discovery violation.[7] *See Tucker, supra*; Pa.R.Crim.P. 573(B)(1)(b).

Moreover, immediately after its denial of the mistrial motion, the court provided Appellant with two options going forward. First, the court offered to provide a cautionary instruction: "I can do a few things. I can give a cautionary instruction. You can word it and I will take a look at it …." N.T. Trial, 5/10/18, at 234. The court also offered to allow a stipulation: "And so

---

[7] Regarding ADA Boyle's statement that Mr. Smith "told me Big Huss last time before the judge even asked—," defense counsel interrupted ADA Boyle before she could complete her sentence or provide additional context. N.T. Trial, 5/10/18, at 226. At the start of the next day's proceedings, defense counsel renewed his motion for mistrial and provided additional argument in support thereof. ADA Boyle responded by clarifying her statement from the previous day as follows: "So I thought that [Mr. Smith] testified at the [codefendants'] trial about [Appellant]. And I was wrong because I didn't read the notes at the time." N.T. Trial, 5/11/18, at 18.

you can do a stipulation where, you know, either you or Ms. Boyle gets up and says that [Mr. Smith] never said the name Big Homie or Big Huss to the district attorney." *Id.* at 237.

Ultimately, the court did not provide a cautionary instruction. Rather, the parties stipulated that Mr. Smith did **not** inform the Commonwealth that Big Homie or Big Huss was involved in the underlying crimes. *Id.* at 243. Appellant is now bound by his stipulation that the Commonwealth was not in possession of the inculpatory statements at issue, and he cannot argue otherwise. *See Tyson v. Commonwealth*, 684 A.2d 246, 251 n.11 (Pa.Cmwlth. 1996) (stating: "[A] stipulation of facts is binding on both the parties and on this court, and facts effectively stipulated are controlling and conclusive"); *McKelvey v. McKelvey*, 771 A.2d 63, 63 n.1 (Pa.Super. 2001) (explaining party normally binds himself when entering into stipulation, except to matters that affect jurisdiction). *See also Commonwealth v. Mathis*, 463 A.2d 1167 (Pa.Super. 1983) (supporting stipulations in criminal cases). Based upon the foregoing, we conclude the trial court did not abuse its discretion in denying Appellant's motion for mistrial. *See Tucker, supra*. Accordingly, we affirm.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/09/2020