William J. and Susan C.
SMITH, Petitioners,

v.

COMMONWEALTH of Pennsylvania,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1996.

Decided Oct. 17, 1996.

William J. Smith, for Petitioners.

Ronald H. Skubecz, Senior Deputy Attorney General, for Respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and KELTON, Senior Judge.

PELLEGRINI, Judge.

William J. and Susan C. Smith (Smiths) petition for review of the order of the Board of Finance and Revenue (Board) sustaining the Department of Revenue's (Department) assessment of additional personal income tax against them for the year ending on December 31, 1988.

Pursuant to a stipulation of facts filed by the parties, the facts of this case are as follows: [1] William J. Smith is a partner in the law firm of Reed Smith Shaw & McClay (Law Firm). During the tax year at issue in the present case, the Law Firm operated a retirement plan for its partners and employees by which it was required to make contributions to the plan regardless of the exis-

---

**1.** Although this Court hears petitions for review from decisions of the Board in our appellate jurisdiction, we function essentially as a trial court. *PICPA Foundation v. Commonwealth*, 143 Pa.Cmwlth. 291, 598 A.2d 1078, 1080 n. 6 (1991), *aff'd* 535 Pa. 67, 634 A.2d 187 (1993). No record is certified by the Board, and a panel of this Court serves as the finder of fact. Pa.

R.A.P. 1571(f). If a stipulation of facts is filed by the parties, it is controlling and conclusive in this Court's disposition of the petition for review. *Beasley Industries, Inc. v. Commonwealth*, 116 Pa.Cmwlth. 505, 542 A.2d 210 (1988). Here, the parties have stipulated to all of the relevant facts, and therefore, we must adopt them in this opinion.

tence of profits on behalf of the Law Firm. Under the plan, non-elective contributions would be made by the Law Firm and would be allocated to each of the participants in the plan. The Law Firm agreed to make yearly contributions to the plan equal to seven and one-half percent of each participant's total compensation, not to exceed $15,000.00 annually.[2]

In computing its net profits, the Law Firm deducted the contributions that it made for each participant, including partners. Additionally, the compensation reported on a Form W–2 for an employee and on the Pennsylvania Copy of Schedule K–1 for a partner included all elective contributions made by the employee or partner; they did not include the non-elective contributions made on behalf of each participant.

For 1988, the Law Firm provided William Smith with a Federal Schedule K–1 (Form 1065) which listed his income for federal tax purposes as $243,022.00. Additionally, the Law Firm provided William Smith with another Federal Schedule K–1 (Form 1065) labelled "Pennsylvania Copy" that listed his income for Pennsylvania tax purposes as $227,631.24.[3] The disparity between William Smith's federal income and the net profits on his Pennsylvania Copy is explained as follows:

| | |
|---|---|
| Federal Income | $243,022 |
| Less: Non-Elective Contribution | – $ 15,000 |
| 20% Reduction of Meal and Entertainment Expenses | – $ 391 |
| Pennsylvania Net Profits | $227,631 [4] |

In filing their 1988 joint personal net income tax return, Form PA–40, the Smiths

used $227,631.00 as their net profits from the Law Firm. After reviewing the Smiths' tax form, the Department made adjustments to the net profits from the Law Firm by including, amongst other items, the $15,000.00 non-elective contribution in William Smith's net profits.[5] The Smiths appealed to the Board of Appeals which sustained the Department's determination. The Board of Finance and Revenue also sustained the Department's assessment, and the Smiths filed the present petition for review.

Attached to the parties' stipulation of facts was a letter from Price Waterhouse LLP addressing the issue of whether the Law Firm's contributions to the retirement plan are deductible from its net profits. In relevant part, the Price Waterhouse letter concluded that:

> Treating the Mandatory Contributions as an expense in computing Reed Smith's net profit would be an acceptable accounting practice for financial statement presentation purposes.

The letter noted, however, that:

> [T]he Financial Accounting Standards Board has not issued any pronouncements on the treatment of items such as the Mandatory Contributions in the preparation of financial statements for partnerships; accordingly, there are no "Generally Accepted Accounting Principles" ... that are applicable in this area.

We begin by observing several relevant principles of law pertaining to partnerships. The Partnership Code defines a partnership as an association of two or more persons to carry on as *co-owners* a business for profit. 15 Pa.C.S. § 8311. A partnership, unlike a corporation, is not recognized as an entity that is separate and distinct from that of the

---

2. Additionally, every participant was allowed to make voluntary elective contributions to the plan.

3. Line 1 of the Pennsylvania Copy of the Federal Schedule K–1 listed Smith's ordinary income as $237,631.24. The parties have agreed that this amount was in error and that it should have been $227,631.24.

4. Although there were other deductions that William Smith claimed, including business loss and expenses, any dispute regarding those deductions have been resolved by the parties. Therefore, they will not be addressed by this Court in this opinion.

5. The Department adjusted the Smiths' net profits by including other items that they sought to deduct. However, those matters have been resolved, and for purposes of clarity, we will address only the non-elective contributions.

individuals who compose it. *In re: Morrison's Estate,* 343 Pa. 157, 22 A.2d 729 (1941). This principle of law is followed in Section 306 of the Tax Code which provides that:

A partnership or association as such shall not be subject to the tax imposed by this article, but the income or gain of a member of a partnership or association in respect of said partnership or association shall be subject to the tax and the tax shall be imposed on his share, whether or not distributed, of the income or gain received by the partnership or association for its taxable year.

Act of March 4, 1971, P.L. 6, § 306, *as amended,* 72 P.S. § 7306.

## I.

■ The Smiths first contend that the Board erred in not permitting the Law Firm to deduct from its net profits the $15,000.00 retirement contribution made to the plan. They argue that the contribution was a cost or expense incurred in the conduct of business, and therefore, according to the accepted accounting principles recognized in the Price Waterhouse letter, they should be deductible from the Law Firm's net profits. If that occurs, the Smiths argue, then the contribution made on behalf of William J. Smith will be deducted from his share of the Law Firm's net profits attributed to them, lessening their personal state income tax.

"Net profits" are defined in the Tax Code as:

The net income from the operation of a business, profession or other activity, after provision for all costs and expenses incurred in the conduct thereof, determined either on a cash or accrual basis in accordance with accepted accounting principles and practices but without deduction of taxes based on income.

Act of March 4, 1971, P.L. 6, § 303(a)(2), *as amended,* 72 P.S. § 7303(a)(2).[6] In determining whether a cost or expense is incurred in the conduct of business, the Department regulations define "accepted accounting principles and practices" as being:

Those accounting principles, systems or practices which are acceptable by standards of the accounting profession *which are not inconsistent with the regulations of the Department setting forth those principles and practices.*

61 Pa.Code § 101.1 (emphasis added). In this regard, 61 Pa.Code § 107.3 specifically provides that in determining the net income of a partnership, "[d]eductions may not be allowed for expenses not related to the production of income, nor may taxes based on income be allowed as a deduction." Moreover, another Department regulation specifically provides that:

Contributions by, or on behalf of or attributable to a self-employed person are not excludable from either compensation or net profits from a business, profession or other activity.

61 Pa.Code § 101.6(c)(8).

In the present case, disregarding the fact that the Price Waterhouse letter specifically states that there are no generally accepted accounting principles to determine whether retirement contributions on behalf of a partner are allowable deductions from the partnership's net profits, the position set forth in the letter is inconsistent with the Department's regulations regarding deductions for such contributions. First, being co-owners of the Law Firm, the partners assume the status of self-employed individuals.[7] As such,

---

**6.** The Department regulation defines "net profits" using the same terminology as the Tax Code. 61 Pa.Code § 103.12.

**7.** The Smiths argue that the partners of the Law Firm should not be compared to self-employed individuals because they never actually or constructively receive the retirement contributions. Because they have not constructively received the contributions, the Smiths argue, they cannot be considered part of their income. This argument, however, disregards the fact that the receipt of income is irrelevant because partners are taxed for their share of the partnership's net profits irrespective of whether or not they have been distributed to the partners. Moreover, the partners of the Law Firm elected to have the contributions made to the retirement plan for Federal Income Tax purposes and theoretically could elect to cease such automatic contributions, thus contradicting the Smiths' contended lack of constructive receipt.

Department regulations preclude the deduction from net profits of any retirement contributions made on their behalf. Furthermore, because partners acquire the status of self-employed individuals, any contributions to the plan are not expenses related to the production of income, and therefore, may not be deducted from the Law Firm's net profits. *See Kalodner v. Commonwealth*, 150 Pa. Cmwlth. 248, 615 A.2d 900, 904 (1992), *aff'd*, 544 Pa. 181, 675 A.2d 710 (1995) (holding that contributions to a retirement plan by a self-employed individual for his or her behalf are not ordinary expenses incurred in the conduct of business).

## II.

■ If the Law Firm's contributions to the retirement plan on behalf of the partners are not deductible from its net profits, the Smiths argue that the Department's regulations create a distinction between employees and self-employed individuals, and therefore, violates the Uniformity Clause of the Pennsylvania Constitution and the Equal Protection Clause of the United States Constitution. Where, as here, there is a challenge to the validity of a classification for tax purposes, the test is whether the classification is based upon some legitimate distinction between the classes that provides a non-arbitrary, reasonable, and just basis for the difference in treatment. *Leonard v. Thornburgh*, 507 Pa. 317, 489 A.2d 1349 (1985). In other words, this Court must determine whether there is some concrete justification for treating the relevant groups of taxpayers as members of different classes subject to different tax burdens. *Id.*

In the context of including retirement contributions as part of an individual's income, there is a rational basis for distinguishing between self-employed individuals, or partners, and employees. *Kalodner v. Commonwealth*, 150 Pa.Cmwlth. 248, 615 A.2d 900 (1992), *aff'd*, 544 Pa. 181, 675 A.2d 710 (1995). In making contributions to their own retirement plans, self-employed individuals or partners are contributing money that they have actually or constructively received. The retirement contributions made on behalf of the partners is money that they would

otherwise receive in their share of the net profits of the partnership, and the contributions are made, at least theoretically, at the election of the partners. On the other hand, when an employer makes contributions to an employee's retirement plan, the contributions are not made by reducing the employee's salary, and the employee is given no control over whether the contributions are to be made. Furthermore, the employee does not actually or constructively receive the contributions because the receipt of benefits under the retirement plan could be subject to substantial limitations and restrictions. *Id.* There is, therefore, a legitimate and non-arbitrary reason for distinguishing between partners and employees, thus rendering the Department's regulations constitutional. *See also Houston v. City of Pittsburgh*, 8 Pa. Cmwlth. 468, 303 A.2d 860 (1973) (finding a distinction between a lawyer who works for a corporation and a lawyer who establishes an individual practice for purposes of assessing a business privilege tax upon the latter but not the former); *Commonwealth v. Buckley*, 510 Pa. 326, 508 A.2d 281 (1986), *appeal dismissed*, 479 U.S. 802, 107 S.Ct. 43, 93 L.Ed.2d 5 (1986) (holding that a distinction between an employee who receives compensation and an employer who obtains net profits in the context of a non-residence tax exemption is constitutional).

Accordingly, the decision of the Board is affirmed.

### ORDER

AND NOW, this 17th day of October, 1996, the order of the Board of Finance and Revenue at No. 6292, dated July 22, 1992, is affirmed.

Unless exceptions are filed hereto within 30 days, in accord with the provisions of Pa. R.A.P. § 1571(i), judgment shall be entered as set forth by the Board of Finance and Revenue on praecipe of either party.