**Craig S. and Sharon L. IGNATZ, Petitioners**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

**Betty Sue Peabody, Petitioner**

v.

**Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 29, 2004.

Decided May 12, 2004.

---

Richard I. Halpern, Pittsburgh, for petitioners, C. & S. Ignatz.

Thomas D. Arbogast and Stewart M. Weintraub, Pittsburgh, for petitioner, B. Peabody.

Ronald H. Skubecz, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY President Judge COLINS.

Craig and Sharon Ignatz and Betty Sue Peabody (Taxpayers) petition for review of orders of the Board of Finance and Revenue assessing personal income tax on compensation the Taxpayers deferred to unfunded, non-qualified [1] employer plans by

---

1. Simply put, a qualified plan is one that meets the numerous requirements of IRC

§ 401(a) (stock bonus, pension, and profit

irrevocable election made in a year before the compensation was payable. In a question of first impression, the Taxpayers challenge the Department of Revenue's determination that, pursuant to personal income tax regulation 61 Pa.Code § 101.6(a), the compensation was constructively received in the year the compensation was earned. The court adopts the following facts as stipulated by the parties in these cases.

## Giant Eagle Executive Deferred Compensation Plan and Taxpayers Ignatz

Taxpayer Craig Ignatz has worked for Giant Eagle, Inc. since 1975. In 1997, Giant Eagle adopted an Executive Deferred Compensation Plan, an unfunded plan that provides deferred compensation benefits to management and highly compensated employees. A Giant Eagle Plan participant may elect to defer receipt of a portion of compensation (i.e., salary, bonus, or long-term incentive) until a later year or until retirement, disability, death, or termination of employment. The election must be made in a period prior to that in which the compensation is earned, and the election is irrevocable. The participant has no right to receive, without penalty, a deferred amount until the time specified in the election. A participant's account is an unfunded obligation of Giant Eagle payable from its general funds, credits to the account cannot be pledged or assigned, and participants and their beneficiaries have the status of unsecured general creditors of Giant Eagle.

Ignatz has been a Giant Eagle Plan participant since 1997 and over the intervening years has deferred portions of his long-term incentive, bonus, and base salary; part is deferred until his retirement and part is deferred until the years 2006 and 2009.[2] As a result of these elections, Ignatz deferred a total of $89,323.30[3] for the 2000 tax year. Craig and Sharon Ignatz filed a 2000 joint Pennsylvania personal income tax return, omitting the deferred compensation. The Department of Revenue reviewed their return and increased their gross compensation by adding the deferred amount and assessing penalties and interest.

The Board of Appeals and Board of Finance and Revenue affirmed the assessments. In sustaining the assessments, the Board cited 61 Pa.Code § 101.6(c)(8)(ii)(B), which pertains to voluntary employee contributions to old age or retirement benefit plans, but ultimately concluded that the Ignatzes constructively received the income in 2000 and were not entitled to reduce income by contributions to an nonqualified deferred compensation plan.

## Mellon Bank Corporation Elective Deferred Compensation Plan and Taxpayer Peabody

Taxpayer Betty Peabody was employed by Mellon Bank from April 1988 until her retirement in May 2001. In 1999 and 2000, Peabody was a participant in Mellon Bank's Elective Deferred Compensation Plan for Senior Officers, which permits a participant to defer the receipt of a portion of salary or bonus until retirement, disability, death, or separation from service. The election must be made in a year prior to

sharing plans) and 403(a) and (b) (annuities) and qualify for favorable tax treatment.

2. An August 1997 election deferred 60 percent of any long-term incentive earned from 1997 through 2000; a May 1999 election deferred 10 percent of any bonus earned from July 1, 1999 through June 30, 2000; and a November 1999 election deferred 3 percent of his base salary earned in the calendar year 2000.

3. $3,244 in base salary, $83,803.20 in long-term incentive, and $2,276.10 in bonus compensation.

that in which the compensation is earned, the election is irrevocable, and the participant has no right to receive the compensation without penalty before the triggering event. A reduction in the deferral amount or early distribution may be approved by the plan's benefits committee on financial hardship grounds. A participant's account is an unfunded obligation of Mellon Bank payable from its general funds, and participants and their beneficiaries have the status of unsecured general creditors of Mellon Bank.

In December 1999, Peabody made irrevocable election for the year 2000 and future years to defer $4,116 of her base compensation per pay period. A prior election deferred 100 percent of her annual cash bonus/incentive. For 1999 and 2000, she deferred $171,492 and $154,784, respectively. Mellon Bank did not report the deferred amounts as wages on Peabody's W–2 for federal income tax purposes; it did report the deferred amounts as wages on the W–2 for Medicare purposes. Peabody did not report the deferred compensation on her Pennsylvania personal income tax returns. The Department of Revenue issued notices of assessment increasing her gross compensation for those years and assessing additional tax, plus penalties and interest. The adjustments to Peabody's gross compensation relating to the amounts deferred into Mellon Bank's deferred compensation plan were sustained by the Board of Appeals and the Board of Finance and Revenue. The Board concluded that Peabody constructively received the income in question

in 1999 and 2000 by virtue of her election to defer receipt.

■ On appeal,[4] the Taxpayers collectively raise the following issues. First, whether the amounts Taxpayers voluntarily contributed to their employers' nonqualified, unfunded deferred compensation plans were compensation subject to Pennsylvania personal income tax in the year in which the amounts were contributed to the plans. Taxpayers argue that the deferred amounts are not taxable as compensation until the funds are paid from the plan, or distributed, because at the time of election the funds have not yet been earned and once earned cannot be drawn upon without substantial restrictions and penalties. They argue that 61 Pa.Code § 101.7(c) is virtually identical to the federal income tax regulation that states the general accounting rule for constructive receipt of income, and that under the federal rule the amounts contributed to the employers' plans would not be taxable in the year of deferral.

In addition, the Taxpayers question 1) whether the deferred compensation plans in question are old age and retirement benefit plans within the meaning of 61 Pa.Code § 101.6(c)(8); 2) whether the Commonwealth's inclusion of the deferred amounts violates constitutional uniformity when employer-mandated deferrals are not taxable in the year deferred; and 2) in the event that the court rules in the Commonwealth's favor, whether the penalties should be abated pursuant to Section 352.1 of the Tax Reform Code of 1971 (Code),[5] 72 P.S. § 7352.1, because the Taxpayers

---

4. In appeals from the Board of Finance and Revenue, our review is broad because this Court functions as a trial court, even though such cases are heard in our appellate jurisdiction. *Solar Turbines Inc. v. Commonwealth,* 816 A.2d 362 (Pa.Cmwlth.2003). Questions raised in the petition for review are determined on the record made before this Court;

parties may stipulate to facts upon which they agree and issues that remain to be tried. Pa. R.A.P. 1571(f), (h).

5. Act of March 4, 1971, P.L. 6, *as amended,* added by Section 7 of the Act of July 1, 1985, P.L. 78.

acted in good faith with no negligence or intent to defraud.

## Constructive Receipt for Pennsylvania Personal Income Tax Purposes

Section 302(a) of the Code,[6] 72 P.S. § 7302(a), imposes a personal income tax on every dollar of income received by a resident during the taxable year. Section 303(a)[7] sets forth the classes of income subject to the tax, which include "compensation," defined as "[a]ll salaries, wages, commissions, bonuses and incentive payments ... *received* for services rendered whether directly or through an agent and whether in cash or property...." 72 P.S. § 7303(a)(1) (emphasis added). "Received" for the purpose of computation of income subject to the personal income tax means "received, earned or acquired" according to the taxpayer's method of accounting. Code Section 301(q),[8] 72 P.S. § 7301(q).

Department of Revenue regulations interpreting the Pennsylvania personal income tax provisions describe in greater detail the types of payments included in "compensation." 61 Pa.Code § 101.6(a), Compensation, states in pertinent part:

(a) Compensation includes items of remuneration received, directly or through an agent, in cash or in property, based on payroll periods or piecework, for services rendered as an employee or casual employee, agent or officer of an individual, partnership, business or nonprofit corporation, or government agency. These items include salaries, wages, commissions, bonuses, stock options, incentive payments, fees, tips, dismissal, termination or severance payments, early retirement incentive payments and other additional compensation contingent upon retirement, including payments in excess of the scheduled or customary salaries provided for those who are not terminating service, rewards, vacation and holiday pay, paid leaves of absence, payments for unused vacation or sick leave, tax assumed by the employer, or casual employer signing bonuses, amounts received under employee benefit plans and deferred compensation arrangements, and other remuneration received for services rendered.

61 Pa.Code § 101.7, Receipt of income, states, in pertinent part:

(a) *General rule.* An amount, the privilege of receiving which is taxable, shall be considered as received in the year in which it is actually or constructively received unless includable for a different year in accordance with the method of accounting of the taxpayer.... Under the cash receipts and disbursements method of accounting, such an amount shall be includable in gross income when actually or constructively received.

. . . .

(c) *Constructive receipt of income.* Income although not actually reduced to possession shall be constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time. However, income may not be constructively received if the control by the taxpayer of its receipt is subject to substantial limitations or restrictions. Therefore, if a corporation credits its employees with bonus stock, but the

---

6. Added by Section 8 of the Act of August 4, 1991, P.L. 97.

7. Added by Section 4 of the Act of August 31, 1971, P.L. 362.

8. Added by Section 4 of the Act of August 31, 1971, P.L. 362.

stock is not available to the employees until some future date, the mere crediting on the books of the corporation does not constitute receipt.

The Taxpayers in the present matters, noting that the Pennsylvania regulation governing constructive receipt of income is virtually identical to federal Treasury Regulation § 1.451–2(a),[9] that it represents the Commonwealth's adoption of federal law, and that therefore federal interpretation of constructive receipt of income should prevail in this case to exclude from income taxation in 1999 and 2000 the amounts the Taxpayers elected to defer into the Giant Eagle and Mellon Bank deferred compensation plans.

The Commonwealth concedes that the amounts in question would not be taxable as income constructively received under federal tax law, but it takes the position that under the Pennsylvania rule of constructive receipt, the amounts are taxable in the year when the taxpayer has the right to receive them. The Commonwealth argues that a taxpayer's ability to elect whether to take the full amount in cash or to take part in cash and part in contributions to a deferred compensation plan establishes the taxpayer's requisite control over the compensation to establish constructive receipt. The Commonwealth argues that Pennsylvania's overall taxing scheme is to tax personal income when it is contributed to deferred compensation and retirement compensation plans pursuant to a voluntary salary reduction agreement

rather than to tax distributions from those plans. The Commonwealth also argues that constitutional uniformity results from imposing equal tax burdens on all taxpayers who earn the same income. We agree with the Commonwealth.

■■■ Time and again this Court has rejected taxpayers' application of federal tax principles to the Pennsylvania tax scheme.

> [R]eliance on federal law to determine whether contributions are subject to Pennsylvania personal income tax is misguided. "The sovereign power of taxation, except that part of it ceded to the United States, is in the state...." *Curtis' Estate*, 335 Pa. 414, 416, 6 A.2d 283, 284 (1939). "In Pennsylvania, the power to tax is statutory and must be derived from enactment of the General Assembly." *H.K. Porter Company Appeal*, 421 Pa. 438, 440, 219 A.2d 653, 654 (1966).

*AMP Products Corporation v. Commonwealth*, 140 Pa.Cmwlth. 346, 593 A.2d 1, 3 (1991). The cases of *AMP Products* and *Smith v. Commonwealth*, 684 A.2d 647 (Pa.Cmwlth.1996), in which this court addressed the assessment of Pennsylvania personal income tax on contributions to employee benefit plans, are instructive.

In *AMP Products* at issue were employee contributions to AMP's defined contribution pension benefit plan, which Pennsylvania recognized as an old age or

---

9. 1.451.2. Constructive receipt of income, states in pertinent part:

(a) *General rule.* Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of

intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. Thus, if a corporation credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute constructive receipt.

retirement benefit plan.[10] An employee contributed to the plan pursuant to a salary reduction agreement (i.e., a form of election) under which the employee was compensated in part in cash and in part in contributions to the plan. We rejected AMP's argument that under the federal law, which is mirrored in the Pennsylvania's definition of constructive receipt, the contributions were not taxable because the employee had no actual or constructive receipt. We concluded that the contributions were subject to Pennsylvania personal income tax and that the Commonwealth as sovereign chose to tax such contributions at the time they were made even though the contributions were not subject to federal income tax until distribution.

The issue in *Smith* involved the assessment of additional personal income tax on a partnership's nonelective contributions to its retirement plan. In that case, the employer annually contributed a percentage of a participant's total compensation to the retirement plan, and the participant could make voluntary elective contributions. Smith, a partner, appealed the assessment of additional personal income tax on amounts contributed to the plan. In concluding that the contributions were taxable when contributed, the court noted that the retirement contributions made on behalf of the partners is money that they otherwise would have received in their share of partnership net profits and that the contributions were made at the partners' election. The court drew a distinction between elective contributions that reduce the participant's salary and employer contributions to an employee's retirement plan that are not made by reducing the employee's salary and over which the participant has no control.

The Taxpayers' reliance on *Gosewisch v. Commonwealth*, 40 Pa.Cmwlth. 565, 397 A.2d 1288 (1979), is misplaced. At issue in that case were employer contributions to a profit sharing trust. In 1973, Gosewisch received a lump sum distribution that consisted of amounts contributed both before and after June 1, 1971, the effective date of the Pennsylvania personal income tax. The Commonwealth assessed the tax on the entire amount of the distribution, and the taxpayer appealed. In sustaining the tax, the Court concluded that the distribution constituted "compensation" the taxpayers actually received in 1973, and that unless the taxpayer could demonstrate that a portion of the distribution was constructively received before June 1, 1971, the entire amount was taxable. Applying the Pennsylvania constructive receipt regulation, the Court looked to the federal rule of constructive receipt and concluded that payments to a trust for the benefit of a taxpayer were not constructively received when contributed to the plan. The facts of *Gosewisch* are completely distinguishable from the facts in the present case, which involves employee deferrals of compensation through voluntary salary reductions, and the result is not inconsistent with the Commonwealth's position in the present case.

We reject the Taxpayers' attempt to distinguish the personal income tax treatment of amounts deferred pursuant to the unfunded deferral arrangements at issue in this case from the treatment of contributions to funded plans in *AMP Products* and *Smith*. In the present case, each Taxpayer was entitled to the entire amount of his and her salary, bonus, and incentive in the year in which it was earned, and through elective deferrals pursuant to an executive deferred compensation plan, each Taxpayer reduced the

---

**10.** See 61 Pa.Code § 101.6(c)(8).

amount he or she actually received. But for the election, the deferral amounts were money the Taxpayer would have received. Based on this Court's interpretation of Pennsylvania's rule of constructive receipt in *AMP Products* and *Smith*, the amounts the Taxpayers deferred pursuant to the executive deferred compensation plans are taxable for Pennsylvania personal income tax purposes at the time they would have been received but for the election to defer. *And see Kalodner v. Commonwealth*, 150 Pa.Cmwlth. 248, 615 A.2d 900 n. 1 (1992) (contributions to withheld from an employee's paycheck or originating from a salary reduction agreement are not excludable from income). But for the election, the amounts would absolutely have been paid to the Taxpayers; the amounts became a mere promise to pay, unsecured in any way, by election of the Taxpayers.

We note although the current version of the federal constructive receipt doctrine is found in Treas. Reg. 1.451–2(a), the federal constructive receipt doctrine was not always applied as liberally as it is today. In 1960, the Internal Revenue Service issued Revenue Ruling 60–31, in which it applied the constructive receipt and economic benefit doctrines to deferred compensation plans and in which it quoted a 1935 Board of Tax Appeals (predecessor to the Tax Court) decision as follows:

> It is clear that the doctrine of constructive receipt is to be sparingly used; that amounts due from a corporation but unpaid, are not to be included in the income of an individual reporting his income on a cash receipts basis *unless it appears that the money was available to him, that the corporation was able and ready to pay him, that his right to receive was not restricted, and that his failure to receive resulted from exercise of his own choice.*

Rev. Rul. 60–31 (quoting *Gullett v. Commissioner*, 31 B.T.A. 1067 (1935)) (emphasis added). The Commonwealth's constructive receipt rule is consistent with this earlier application of the doctrine.

**Uniformity**

■ Next we address the Taxpayers' argument that the application of constructive receipt advocated by the Commonwealth impairs uniformity. The Commonwealth argues that constitutional uniformity requires that all Pennsylvania taxpayers with the same income be subject to the same tax burden and that its rule of constructive receipt promotes uniformity. We agree.

As noted by our Supreme Court in *Amidon v. Kane*, 444 Pa. 38, 46, 279 A.2d 53, 58 (1971), the constitutional imperative of uniformity in taxation has remained unchanged since its first adoption in the Constitution of 1874. "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. Art. 8. § 1. By including in income all amounts electively deferred pursuant to a funded or unfunded deferred compensation plan, the Commonwealth promotes uniformity of taxation. *Smith; Kalodner.*

As part of the Taxpayers' uniformity claim, they argue that the Commonwealth's taxing scheme results in the mismatching of employee income and the employer's deductions and withholding obligations and results in the taxation of income that the employee may never receive if the employer defaults on an unfunded promise to pay. The Taxpayers invoke the accounting scandals resulting in the financial devastation to employees of Enron, Worldcom, and Arthur Anderson to demonstrate the wisdom of waiting to tax the deferred amounts,

which may never be actually received. These arguments are unavailing.

The deferral arrangements in question are executive deferred compensation plans provided to permit executives and highly paid employees the advantage of deferring salary, bonuses, and incentives that they do not currently need to obtain the advantage of deferring the payment of federal income tax and in some cases accruing credits or premiums. By electing to defer compensation into an unfunded employer plan, the Taxpayers presumably weighed and accepted the risk of nonpayment.

**Underpayment Penalties**

The Commonwealth in its brief concedes that in this case the Taxpayers have acted in good faith and without negligence or intent to defraud, and agrees that underpayment penalties should be abated.

Accordingly, the orders of the Board of Finance and Revenue are affirmed as to the payment of additional personal income tax and interest and reversed as to the underpayment penalties.

### *ORDER*

AND NOW, this 12th day of May 2004, the orders of the Board of Finance and Revenue in the above-captioned matters are affirmed as to the assessment of additional tax and interest and reversed as to the underpayment penalties.

Unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i), this order shall become final.