The **PROVIDENT MUTUAL LIFE INSURANCE COMPANY,**
Appellant,

v.

**TAX REVIEW BOARD.**

Commonwealth Court of Pennsylvania.

Argued March 7, 2000.

Decided April 28, 2000.

---

David R. Kraus, Harrisburg, for appellant.

Christine T. Bak, Philadelphia, for appellee.

Before McGINLEY, J., FLAHERTY, J., and RODGERS, Senior Judge.

McGINLEY, Judge.

The Provident Mutual Life Insurance Company (Provident) appeals from the order of the Court of Common Pleas of Philadelphia County (common pleas court) that affirmed the Tax Review Board of the City of Philadelphia's (Board) decision that denied Provident a refund from the City of Philadelphia Realty Transfer Tax (Tax).

Covenant Life Insurance Company (Covenant) loaned money to the purchasers of properties located at 1801, 1805, 1807 and 1809 Walnut Street and 126, 128, 130, and 132 South 18 th Street (Properties) in the City of Philadelphia (City). Covenant issued an original purchase money mortgage that secured the loan. Prior to July 13, 1995, Covenant merged with Provident. Provident was the name used by the merged entity. As a result of the merger, Provident held the mortgage on the Properties.

On July 13, 1995, Provident acquired the Properties by deed in lieu of foreclosure. At the time of the foreclosure, the Properties had an assessed value of $8,535,966.70, and $2,452,864 after the value was multiplied by the common level ratio factor. The City assessed $256,079 in Tax pursuant to Section 19–1402(14)(b) of the Philadelphia Code (Code). Provident paid the Tax on or about July 19, 1995. On December 31, 1995, Provident sold the Properties to an unaffiliated business, at arm's length, at a fair market value of $6,150,000.

On May 5, 1997, Provident petitioned for a refund of the Tax. Provident contended before the Board that its acquisition of the Properties through the deed in lieu of fore-

closure was exempt from the Tax because Section 19–1405(14) of the Code excludes from the Tax transactions involving the transfer of real estate "by a mortgagor to the original grantor holding the purchase money mortgage whether such a transfer is pursuant to a deed in lieu of foreclosure or a transfer pursuant to a judicial sale." Provident contended that Covenant was the original grantor and after the merger Provident stood in Covenant's shoes. The Board found that the Tax exclusion did not survive the merger and was unavailable to the surviving corporation. The Board reasoned that when Covenant ceased to exist at the time of the merger, the Tax exclusion ceased to exist as well.

Provident also contended that if the transaction were subject to the Tax, the amount of the Tax should be determined by the fair market value at the sale six months later. The Board disagreed and found that under Section 19–1402(14)(b) of the Code the value of a property transferred for consideration at less than the actual monetary worth is computed by adjusting the assessed value for the common level ratio factor for the City as established by the State Tax Equalization Board. On July 14, 1998, the Board denied Provident's petition.

■ Provident appealed to the common pleas court. Before the common pleas court, Provident argued the following: 1) the acquisition of the Properties through the deed in lieu of foreclosure was excluded from taxation under Section 19–

1405(14) of the Code; 2) if the transaction is not excluded from taxation, then the Tax exceeds the City's authority; 3) the General Assembly's legislation on mergers preempted the City from this area of law; and, 4) if the Tax is applicable, the value upon which the Tax was imposed was inflated and violates the uniformity requirements of the Pennsylvania Constitution. On February 3, 1999, the common pleas court affirmed. Provident also presents these issues before us.[1]

## I. Was The Acquisition Excluded under Section 19–1405(14) of the Code?

■ Provident contends that its acquisition of the Properties by way of a deed in lieu of foreclosure was excluded from the Tax under Section 19–1405(14) of the Code. The common pleas court agreed with the Board that the exclusion from the Tax which was available to the original grantor of a mortgage did not survive Covenant's merger with Provident because Section 1929(a) of the Business Corporation Law of 1988(Law), 15 Pa.C.S. § 1929, provides that "[u]pon the merger or consolidation becoming effective ... [t]he separate existence of all constituent parties to the merger or consolidation shall cease, except that of the surviving corporation, in the case of a merger." The common pleas court also found that original grantor status and entitlement to local tax exemptions are not included in the list of property rights that are transferred to a surviving corporation as found in Section 1929(b) of the Law, 15 Pa.C.S. § 1929(b).[2] We agree

1. Our review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Maggio v. Tax Review Board of the City of Philadelphia*, 674 A.2d 755 (Pa.Cmwlth.1996), *petition for allowance of appeal denied*, 547 Pa. 739, 690 A.2d 238 (1997).

2. Section 1929(b) of the Law provides:

All the property, real, personal and mixed, and franchises of each of the corporation parties to the merger or consolidation, and all debts due on whatever account to any of

them, including subscriptions for shares and other choses in actions belonging to any of them, shall be deemed to be transferred to and vested in the surviving or new corporation, as the case may be, without further action, and the title to any real estate, or any interest therein, vested in any of the corporations shall not revert or be in any way impaired by reason of the merger or consolidation. The surviving or new corporation shall thenceforth be responsible for all the liabilities of each of the corporations so merged or consolidated. Liens upon the property of the merging or consolidated corporations shall not be im-

with the common pleas court that Provident's acquisition of the Properties by way of a deed in lieu of foreclosure was not excluded from the Tax under Section 19–1405(14) of the Code.

## II. Does the Tax Exceed the City's Authority?

■ Provident next contends that the City's authority to tax is limited by the Commonwealth and that any tax imposed by the City not authorized by the Commonwealth is invalid. Provident correctly asserts that the City's authority to impose a real estate tax is codified in Section 1301 of the Local Tax Reform Act (Act) [3], 72 P.S. § 4750.1301.[4] Provident states that Pennsylvania excludes from the state real estate transfer tax a transfer by a mortgagor to the holder of a mortgage in default in lieu of a foreclosure or a transfer following a judicial sale where the purchaser is the mortgage holder in Section 1102–C.3(16) of the Tax Reform Code of 1971 [5], 72 P.S. § 8102–C.3(16). Therefore, according to Provident, the City does not have the authority to tax this transaction

under Section 1301(b)(1) of the Act because the transaction is excluded from the state realty transfer tax. Provident also argues that the City does not have the authority to tax this transaction under Section 1301(b)(2) of the Act because the City can only tax additional classes or types of transactions under that section and the transfer to a mortgagee cannot be viewed as an additional transaction when it is specifically covered under the Tax Reform Code of 1971.

Further, Provident adds that a tax imposed by the City on additional classes or types of income must be enacted pursuant to Section 1 of the act popularly known as the Sterling Act (Sterling Act) [6]. The Sterling Act authorized the City to tax transactions occurring within the City unless that object of taxation is subject to a state tax or license fee. Provident takes the position that the transfer of real property to the original holder of the mortgage in a deed in lieu of foreclosure is the subject of a specific provision of the Tax Reform Code of 1971 [7]. Therefore the

paired by the merger or consolidation and any claim existing or action or proceeding pending by or against any of the corporations may be prosecuted to judgment as if the merger or consolidation had not taken place or the surviving or new corporation may be proceeded against or substituted in its place.

3. Act of December 13, 1988, P.L. 1121.

4. Section 1301(b)(1) and (2) provide:
(1) From and after the effective date of this chapter, the council of any city of the first class shall have the authority, by ordinance, for general revenue purposes, to levy, assess and collect or provide for the levying, assessment and collection of a tax upon a transfer of real property or an interest in real property within the geographical limits of a city of the first class, regardless of where the instruments making the transfer are made, executed or delivered or where the actual settlements on the transfer take place, to the extent that the transactions are subject to the tax imposed by Article XI–C of the act of March 4, 1971 (P.L. 6, No. 2), known as the Tax Reform Code of 1971.
(2) In addition, such city of the first class may impose a local real estate transfer tax

upon additional classes or types of transactions and may establish standards to be used by the city of the first class to determine the monetary value to be applied to a transaction for the purpose of taxation, if the tax was or is imposed by the city of the first class pursuant to the act of August 5, 1932 (Sp.Sess., P.L. 45, No. 45), referred to as the Sterling Act, or pursuant to this act.

5. Act of March 4, 1971, P.L. 6, added by Act of July 2, 1986, P.L. 318, *as amended.*

6. Act of August 5, 1932, P.L. 45, *as amended,* 53 P.S. § 15971(a).

7. Section 1102–C.3(16) of the Tax Reform Code of 1971, 72 P.S. § 8102.C.3.(16), provides:
The tax imposed by section 1102–C [State *real estate transfer tax*] shall not be imposed upon: . . .
(16) A transfer by a mortgagor to the holder of a bona fide mortgage in default in lieu of a foreclosure or a transfer pursuant to a judicial sale in which the successful bidder is the bona fide holder of a mortgage, unless the holder assigns the bid to another person.

City does not have the authority under Section 1301(b)(2) of the Act to tax this transfer either.

The common pleas court addressed the City's authority to tax under the Sterling Act and did not find Provident's argument persuasive. The common pleas court noted that this Court previously addressed this issue. In *Equitable Assurance Soc. v. Murphy,* 153 Pa.Cmwlth. 338, 621 A.2d 1078 (1993), this Court held that the Sterling Act authorized the City to tax a transfer of stock in a real estate corporation when the real estate owned by the corporation was located within the City where the City had a real estate transfer tax in place.[8] Although the present situation is not identical, it is similar insofar as the City has enacted a real estate transfer tax and has taxed a transfer of real estate within the City.

Further, we cannot agree that because a particular transaction is mentioned but not specifically designated as taxable in the Tax Reform Code of 1971 that this means the City has no authority to tax the transaction under Section 1301(b)(2) of the Act. Section 1301(b)(2) provides that the City may impose a local real estate transfer tax upon additional classes or types of transactions if the real estate transfer tax is imposed pursuant to the Sterling Act. Section 1 of the Sterling Act provides that the City may tax transactions within the City if that transaction is not "subject to a State tax or license fee." 53 P.S. § 15971(a).

Here, this transaction is not subject to a state tax or license fee because this transaction, the transfer of property from a mortgagor to the holder of the mortgage through a deed in lieu of foreclosure, is specifically exempt from the state realty transfer tax as contained in the Tax Reform Code of 1971 as enacted by the General Assembly. Therefore, because this transaction is not subject to a state tax,

the City may levy the Tax on this class of transaction, the conveyance of property through a deed in lieu of foreclosure, pursuant to the Sterling Act and in compliance with Section 1301(b)(2) of the Local Tax Reform Act. Further, the General Assembly did not explicitly state that a Tax on this transaction is prohibited. To the contrary, the General Assembly granted broad authority to the City to tax under the Local Tax Reform Act and the Sterling Act. The common pleas court properly rejected the proposition that the City exceeded its authority by assessing the Tax.

### III. Did the General Assembly Legislatively Preempt this Area of Law?

■ Provident contends that when the General Assembly enacted Sections 1921 through Section 1929 of the Law, 15 Pa. C.S. §§ 1921–1929, it chose to closely regulate the merger of corporations. Provident asserts that the City impermissibly infringed on the State's right to exclusively regulate corporate mergers by assessing a Tax on the merged Provident when Covenant would have been exempt had it not merged with Provident. According to Provident, the Tax clearly impairs a surviving corporation's interest in the real estate by placing a cost on the transfer which did not exist prior to the merger.

The common pleas court addressed this argument:

Appellant's [Provident] claim that the tax is upon the merger of two companies is misguided. At the time the two companies merged there was no attempt to collect taxes based on this transaction by the City. It was not until Provident made the transaction of the deed in lieu of foreclosure that the City attempted to collect any taxes. The loss of tax immunity did not in any way impair the merger. In *Commonwealth v. Western Maryland R.R. Co.,* 377 Pennsylvania [sic]

---

**8.** We note that *Equitable* dealt with a different savings clause that authorized the City to tax

real estate transfers under the Sterling Act.

312, [377 Pa. 312] 105 A.2d 336 (1954), the Pennsylvania Supreme Court held that a legislative exemption from taxation possessed by one of the parties to a merger does not carry over to the surviving corporation.

While arguing that the tax has a negative effect upon the merger, appellant [Provident] claims that this is impermissible because the state has preempted the field of mergers. This flies in the face of the case law. In Pennsylvania preemption is the exception, not the rule. In *Provident Mutual Life Insurance Co. of Philadelphia v. Tax Review Board of City of Philadelphia*, 658 A.2d 500, 502 (1995), the Commonwealth Court held that 'we have refuse [sic] to extend the preemption doctrine beyond the banking and liquor industries.... Either the statute must state on its face that local legislation is forbidden, on [sic] 'indicate an intention on the part of the legislature that it should not be supplemented by municipal bodies.'' quoting *Western Pennsylvania Restaurant Association v. Pittsburgh, 366 Pennsylvania* [sic] 374, 381, [366 Pa. 374] 77 A.2d 616, 620 (1951). In this case there is no evidence that the legislature's pervasive regulation of the law of mergers preempted Philadelphia's [the City] imposition of its realty transfer tax [Tax]. Common Pleas Court Opinion at 5–6. We agree. The General Assembly intentionally chose not to expressly preempt the law of mergers. Also, it decided not to prohibit local legislation and taxation. Provident has unearthed not a thread of evidence to support the position that the General Assembly intended to preempt this area of the law.

### IV. Was the Tax Inflated and Violative of the Uniformity Clause of the Pennsylvania Constitution?

■ Finally, Provident contends that the Properties' assessed value at the time of the transfer so greatly exceeded their true market value that the resulting Tax violated the uniformity requirement of Article VIII, § 1 of the Pennsylvania Constitution which provides that "taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax." Here, Provident believes that the assessed value of $8,535,966.70 of the Properties greatly exceeded the value as subsequently determined by an arm's length transaction for $6,150,000. Provident further believes that levying the Tax based on a disproportionately high assessed value violated the uniformity clause.

Again, the common pleas court addressed this issue:

Finally, we consider appellant's [Provident] argument that the tax is based on an inflated figure and thereby violates the Pennsylvania Constitution's Article VIII, Section 1 Uniformity Clause. The Court does not find this argument persuasive. Appellant [Provident] has a heavy burden of demonstrating that the classification employed by the ordinance is unreasonable. *Commonwealth v. Life Assurance Co. Of [sic] Pennsylvania*, 419 Pennsylvania. [sic] 370, [419 Pa. 370] 214 A.2d 209 (1965), appeal dismissed, 384 U.S. 268, 86 S.Ct. 1467[1476], 16 L.Ed.2d 524 (1966). Appellant [Provident] has not met this burden. According to Philadelphia's Code, Section 19–1403(1), the amount of real estate transfer tax due is determined based on the property's value. The RTT Ordinance sets forth the method to determine the property's value in transactions with and without actual consideration. In an arm's length transaction, the tax base is the consideration, Philadelphia Code Sec. 19–1402(14)(a). In a transaction where the consideration involved does not represent the actual value of the property or where the consideration is difficult to determine, such as property exchanges, the ordinance requires that the tax base is computed using a formula. Philadelphia Code Sec. 19–1402(14)(b).

The formula for finding a value is based on the assessed value as established by the Board of Revision of Taxes for City Real Estate tax purposes. Any argument that the appellant [Provident] may have that the assessed value is not the actual value of the properties must be presented under the procedure for determining the market value to be applied to a property in an assessment appeal as set forth in the General County Assessment Law, Act of May 22, 1993[1933], P.L. 852[853] as amended, 72 P.S. Sec. 5020[-].518.2.

The formula then calls for the assessed value to be multiplied by the published State Tax Equalization Board ratio factor for Philadelphia County. 72 P.S. 4656.1–4656.17. The assessed value represents a determination of the Board of Revision of Taxes of the value of the property, as adjusted by the State Tax Equalization Board. This method of computing the real estate transfer tax is reliable, uniform and not in violation of the Pennsylvania Constitution.

Common Pleas Court Opinion at 6–7. We agree, the Tax was neither inflated nor violative of the uniformity clause.[9]

Accordingly, we affirm.

### ORDER

AND NOW, this 28th day of April, 2000, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.

---

9. Provident argues that it was unable to appeal when the Properties were assessed because it lacked standing. However, the owner of the Properties at the time of the assessment had the opportunity to appeal and challenge the accuracy of the assessment. It is unrealistic to expect the City to reduce the Tax simply because there was a subsequent arm's length sale for less than the assessed value when the formula was in place and correctly applied to determine the Tax.