IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M6 Realty LLC, a New Jersey Limited　:
Liability Company,　　　　　　　　　:
　　　　　　　　　Petitioner　　　　:
　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
Commonwealth of Pennsylvania,　　　:　　No.　797 F.R. 2017
　　　　　　　　Respondent　　　　　:　　Submitted: June 10, 2021


BEFORE:　　HONORABLE PATRICIA A. McCULLOUGH, Judge
　　　　　　HONORABLE ANNE E. COVEY, Judge
　　　　　　HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY　　　　　　　　　　　　FILED:　August 4, 2021


　　　　　M6 Realty LLC (Petitioner) petitions this Court for review of the Board of Finance and Revenue's (Board) August 23, 2017 order denying Petitioner's request for relief from the Pennsylvania Department of Revenue's (Revenue) realty transfer tax assessment.　Petitioner presents two issues for this Court's review: (1) whether the subject real estate transaction is exempt from the real estate transfer tax imposed under Sections 1102-C - 1114-C of the Tax Reform Code of 1971, commonly referred to as the Realty Transfer Tax Act (Act)[1] (Transfer Tax); and (2) whether equity requires that the subject transaction was exempt from the Transfer Tax.　After review, we affirm.

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, added by Section 4 of the Act of May 5, 1981, P.L. 36, 72 P.S. §§ 8101-C - 8114-C.

## Facts

Pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1571(f), Petitioner and the Commonwealth of Pennsylvania (Commonwealth) filed a joint Stipulation of Facts (Stipulation) with this Court.[2] According to the Stipulation, the instant matter involves a dispute between Petitioner and the Commonwealth over a Transfer Tax assessed on a deed (Deed) from Robert E. Bodkin, III and Rebecca Bodkin, husband and wife (collectively, Bodkins), to Petitioner, conveying title to real estate commonly known as 928 Lawn Avenue, West Rockhill Township, Bucks County, Pennsylvania (Property). *See* Stip. ¶2.

On July 31, 2015, First Savings Bank of Perkasie executed two mortgage assignments for mortgages encumbering the Property (Mortgages) to Tuna Management, LLC (TM). *See* Stip. ¶3. Thereafter, Petitioner agreed to accept the Deed as payment in full for the Mortgages, as reflected in an undated document titled "Deed in Lieu Agreement,"[3] and, accordingly, the Deed was executed and

---

[2] A review of determinations of the Board is governed by [Rule] 1571. Although this Court hears such cases in its appellate jurisdiction, it functions essentially as a trial court. Therefore, this Court must consider a record made by the parties specifically for the Court rather than one certified to the Court from the proceedings below.

*Armco, Inc. v. Commonwealth*, 654 A.2d 1191, 1192 (Pa. Cmwlth. 1993) (citation omitted). Rule 1571(f) mandates that the parties "prepare and file a stipulation of such facts as may be agreed to . . . ." Pa.R.A.P. 1571(f). "The facts stipulated by the parties are binding and conclusive and should be regarded as this Court's findings of fact." *Quest Diagnostics Venture, LLC v. Commonwealth*, 119 A.3d 406, 410 n.4 (Pa. Cmwlth. 2015), *aff'd*, 148 A.3d 448 (Pa. 2016). "'However, this Court may draw its own legal conclusions.'" *Am. Elec. Power Serv. Corp. v. Commonwealth*, 184 A.3d 1031, 1034 n.7 (Pa. Cmwlth.), *aff'd*, 199 A.3d 880 (Pa. 2018) (quoting *Kelleher v. Commonwealth*, 704 A.2d 729, 731 (Pa. Cmwlth. 1997)). The parties declared in the Stipulation: "[N]o evidence of [] facts other than in this Stipulation need be adduced in this matter." Stip. at 1.

[3] The undated Deed in Lieu Agreement is purportedly signed by Robert E. Bodkin, III (Bodkin) and Dr. Michael Malka (Malka), identified therein as **Petitioner's** Managing Member. It is accompanied by what appears to be a signed and undated acknowledgment notarized by a New Jersey commissioned notary public. The Bodkin acknowledgment identifies "County of

2

acknowledged on September 3, 2015.[4]  *See* Stip. ¶¶4-5.  On September 8, 2015, TM executed two mortgage assignments, assigning the Mortgages to Petitioner.[5]  *See* Stip. ¶6.

On November 5, 2015, Petitioner recorded the mortgage assignments from First Savings Bank of Perkasie to TM; the Assignments of Mortgage from TM to Petitioner; and the Deed (collectively, the Documents) with the Bucks County Recorder of Deeds (Recorder).  *See* Stip. ¶7.  No Transfer Tax was paid at that time.  On September 9, 2016, Revenue's Bureau of Individual Taxes issued Notice of Assessment No. 2016-2910-09 for Transfer Tax due under Section 1102-C of the Act, 72 P.S. § 8102-C, in the principal amount of $14,117.52, plus interest and fees.  *See* Stip. ¶8.  On September 30, 2016, Petitioner appealed to Revenue's Board of Appeals, but the appeal was denied.  On April 20, 2017, Petitioner filed an appeal

---

Bucks[,]" "Commonwealth of Pennsylvania" as the jurisdiction in which the acknowledgment was taken.  Stip. Ex. F at 10.  The Malka acknowledgment identifies its jurisdiction as "Commonwealth of Pennsylvania," but omits the county.  *Id*.  The Commonwealth contends that because the Deed in Lieu Agreement is undated and contains faulty acknowledgments, it does not comply with New Jersey law.

[4] The Deed, titled "Deed in Lieu of Foreclosure," recites consideration of $10.00, but **makes no reference to the release from the mortgage obligations or a foreclosure**.  Stip. Ex. A.  Specifically, the Deed states:

> [S]aid Grantor for and in consideration of the sum of Ten Dollars 00/100 ($10.00) lawful money of the United States of America, unto it well and truly paid by the said Grantee, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantee, as sole owner Street Address: 928 Lawn Avenue, Sellersville, PA[.]

*Id*.  The signed acknowledgment is notarized and is also dated September 3, 2015.

[5] The mortgage assignments are signed by Malka, identified therein as TM's Managing Member.  Although Malka is identified as both TM's and Petitioner's Managing Member, there is no record evidence demonstrating that TM and Petitioner are related.

with the Board, which the Board denied on August 23, 2017.  Petitioner appealed to this Court.

## Discussion

### 1.  Briefing Defects

The Commonwealth argues that Petitioner's appeal should be dismissed because its brief fails to comply with the Rules.  Specifically, the Commonwealth contends that, although Petitioner is represented by counsel, Petitioner's brief contains substantial defects, including: missing Statement of Scope and Standard of Review, missing Tables of Contents and Citations, missing Stipulation citations, references to facts not included in the Stipulation,[6] and

[6] The Commonwealth states, in pertinent part:

> [Petitioner] also includes several facts not in evidence in its Statement of the Case, including:
>
> > A. There is no evidence in the record as to who owns [TM]. Furthermore, it is irrelevant who the principles [sic] are of the various business entities, because pursuant to the [Act] "corporations and associations are entities separate from their members, partners, stockholders or shareholders." [Petitioner Br. at] 8; [Section 1102-C.4 of the Act, 72 P.S. § 8102-C.4].
> >
> > B. There is no evidence in the record that there were negotiations between [Petitioner] and the Bodkins, and even if true[, this] does not help [Petitioner] prove its claims.  *Id.*
> >
> > C. The recording order of the [D]ocuments is shown by the time stamps on the [D]ocuments themselves, in contradiction to [Petitioner's] statement that "[t]he Documents were recorded in order."  [Petitioner Br. at] 8; [Stip.] [Exs.] A, D-E, G-H.
> >
> > D. There is no evidence in the record to support Petitioner's statement that "[n]o [Transfer Tax] was assessed at the time of recording because the transfer of title via [D]eed in [L]ieu of [F]oreclosure is an otherwise exempt transaction." [Petitioner Br. at 8].

4

improper and insufficient citation to authorities. Accordingly, the Commonwealth asserts that Petitioner has waived all issues because it failed to properly develop any issue for this Court's review.

This Court recognizes that "[t]he [Rules] set forth the fundamental requirements every appellate brief must meet." *Commonwealth v. Perez*, 93 A.3d 829, 837 (Pa. 2014). In particular, Rule 2111(a) states:

> **General rule.--** The brief of the appellant, except as otherwise prescribed by these rules, shall consist of the following matters, separately and distinctly entitled and in the following order:
>
> (1) Statement of jurisdiction.
>
> (2) Order or other determination in question.
>
> (3) Statement of both the scope of review and the standard of review.
>
> (4) Statement of the questions involved.
>
> (5) Statement of the case.
>
> (6) Summary of argument.
>
> . . . .
>
> (8) Argument for appellant.
>
> (9) A short conclusion stating the precise relief sought.
>
> (10) The opinions and pleadings specified in paragraphs (b) and (c) of this rule.
>
> . . . .
>
> (12) The certificates of compliance required by [Rules] 127 and 2135(d).

---

Commonwealth Br. at 10-11 (footnotes omitted).

Pa.R.A.P. 2111(a).

Rule 2119 specifies, in relevant part:

**(a) General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

**(b) Citations of authorities.** Citations of authorities in briefs shall be in accordance with [Rule] 126 governing citations of authorities.

**(c) Reference to record.** If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears (*see* [Rule] 2132).

Pa.R.A.P. 2119.

With respect to tables of contents and citations, Rule 2174 requires, in

pertinent part:

**(a) Tables of contents.** The briefs and the reproduced record shall each contain a full and complete table of contents, set forth either on the inside of the front cover or on the first and immediately succeeding pages. . . .

**(b) Tables of citations.** All briefs shall contain a table of citations therein, arranged alphabetically, which shall be set forth immediately following the table of contents.

Pa.R.A.P. 2174.

Further, Rule 2101 mandates:

Briefs . . . shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, **if the defects are in the brief . . . of the**

> **appellant and are substantial**, **the appeal or other matter may be quashed or dismissed**.

Pa.R.A.P. 2101 (emphasis added).

> However,
>
> [w]hile an appeal may be dismissed or quashed when a defect in a brief is "substantial," Pa.R.A.P. 2101, we may ignore even "egregious violations" of the [Rules] if these defects do not preclude meaningful appellate review. *Richardson v. P[a.] Ins[.] Dep['t]*, 54 A.3d 420, 426 (Pa. Cmwlth. 2012) (quoting *Seltzer v. Dep[']t of Educ[.]*, 782 A.2d 48, 53 (Pa. Cmwlth. 2001)). Our Supreme Court has cautioned that the "extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been substantial compliance with the [R]ules and when the moving party has suffered no prejudice." *Stout v. Universal Underwriters Ins[.] Co.*, . . . 421 A.2d 1047, 1049 ([Pa.] 1980); *see also Giovagnoli v. State Civ[.] Serv[.] Comm['n] (Monroe C[nty.] Child[.] [&] Youth Serv[s.])*, . . . 868 A.2d 393, 399 ([Pa.] 2005).

*Arnold v. Workers' Comp. Appeal Bd. (Lacour Painting, Inc.)*, 110 A.3d 1063, 1067-68 (Pa. Cmwlth. 2015).

Here, although Petitioner did not include a Statement of Scope and Standard of Review, Table of Contents or Table of Citations, and failed to include correct citation to legal authority and the record in the Argument portion of its brief, this Court is able to conduct a meaningful review because Petitioner's position can be deciphered, and such failures did not prejudice the Commonwealth, which was able to respond to Petitioner's arguments. Accordingly, this Court declines to dismiss Petitioner's appeal based solely on these briefing defects.[7]

---

[7] Notwithstanding, this Court expresses its dismay at Petitioner's woefully deficient brief, and emphasizes counsel's obligation to adhere to the Rules.

7

## 2. Transfer Tax Applicability

Petitioner argues that, when it recorded the Deed on November 5, 2016, the Recorder properly imposed no Transfer Tax. It contends that the Transfer Tax is assessed **at the time of recording** and, on that date, Petitioner was a holder of a mortgage in default, and a transfer under those circumstances is a Transfer Tax-exempt transaction.

Initially, Section 1102-C of the Act imposes a tax equal to 1% of the value of the property on "[e]**very person who makes**, **executes**, **delivers**, **accepts or presents for recording** any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording," and requires that the tax "shall be _payable_ **at the earlier of the time the document is presented for recording** _or_ **within [30] days of acceptance of such document** or within [30] days of becoming an acquired company." 72 P.S. § 8102-C (bold and underline emphasis added). Section 1102-C.3(16) of the Act excludes from imposition of the Transfer Tax

> [a] transfer by a mortgagor to the holder of a bona fide mortgage in default in lieu of a foreclosure or a transfer pursuant to a judicial sale in which the successful bidder is the bona fide holder of a mortgage, unless the holder assigns the bid to another person.

72 P.S. § 8102-C.3(16).

In support of its argument that the Transfer Tax is assessed at the time of recording, Petitioner cites _Comach Construction, Inc. v. City of Allentown_, 633 A.2d 1336 (Pa. Cmwlth. 1993), wherein this Court held that "the event that triggers the tax is the recording of the deed." _Id_. at 1338. The _Comach_ Court considered whether imposition of the Transfer Tax and a local business privilege tax constituted an unconstitutional double taxation. The _Comach_ Court determined that "the subject matter of the business privilege tax is the privilege of conducting a business in the

8

City of Allentown[,]" while "[t]he subject matter of the [Transfer Tax] is the recording of a deed." *Id.* Thus, the *Comach* Court concluded that imposition of both taxes did not constitute double taxation. However, the Court did not explicitly address when the Transfer Tax in Section 1102-C of the Act is to be assessed.

This Court has repeatedly held that "[t]he [Transfer Tax] is a tax **upon the transaction**, **the transfer of title to real estate** *as evidenced by a document that is presented to be recorded.*" *Exton Plaza Assocs. v. Commonwealth*, 763 A.2d 521, 523 (Pa. Cmwlth. 2000) (bold and italic emphasis added); *see also Kline v. Commonwealth*, 899 A.2d 408 (Pa. Cmwlth. 2006), *aff'd*, 930 A.2d 1263 (Pa. 2007); *Lester Assocs. v. Commonwealth*, 816 A.2d 394 (Pa. Cmwlth. 2003). "The Act imposes a single tax **on the transaction** with liability for the full amount of the payment on both parties[.]" *Wilson Partners, L.P. v. Commonwealth*, 723 A.2d 1079, 1082 (Pa. Cmwlth. 1999) (emphasis added). Because it is the transaction - "the transfer of title to real estate" - that is taxed, it is the transaction's nature at the time the transfer occurs that determines whether the transaction is taxable. *Exton*, 763 A.2d at 523. This ruling is consistent with Section 1102-C.3(16) of the Act's Transfer Tax exception for "[**a**] **transfer** by a mortgagor **to the holder of a bona fide mortgage in default** in lieu of a foreclosure . . . ." 72 P.S. § 8102-C.3(16) (emphasis added). Accordingly, in the instant case, the exception applies if, **when the transfer** of the Property **to Petitioner occurred**, Petitioner was "the holder of a bona fide mortgage in default in lieu of a foreclosure[,]" *id.*, and if Petitioner "evidenced [such] by [the] document[s] that [were] presented to be recorded."[8] *Exton*, 763 A.2d at 523.

---

[8] The Pennsylvania Supreme Court has

> consistently held a "failure to record [documents demonstrating a conveyance is] not dispositive of whether [the documents] effectuated a valid conveyance." *In re Estate of Plance*, . . . 175 A.3d 249, 266 ([Pa.] 2017); *see also*[] *Morris v. Ziegler*, 71 Pa. 450,

The Commonwealth contends that Petitioner failed to prove it was the holder of a bona fide mortgage at the time the Property was transferred or that the mortgage was in default at the time of the transfer. The record reflects that on September 3, 2015, when the Deed to Petitioner was executed and acknowledged, the Mortgages were held by TM. Five days thereafter, TM executed two mortgage assignments, assigning the Mortgages to Petitioner.[9] Thus, Petitioner was not "the holder of a bona fide mortgage in default in lieu of a foreclosure" on September 3, 2015, when the Property was transferred.[10] Section 1102-C.3(16) of the Act, 72 P.S. § 8102-C.3(16). Accordingly, the Act's Transfer Tax exception does not apply.[11]

453 . . . ([]1872) (finding transfer was ineffective as consequence of bad faith [fraud] and "**not** for simply **not recording** her deed, which in law she was **not bound** to do") (emphasis added); *Appeal of Nice*, 54 Pa. 200, 201 . . . ([]1867) ("it has been held that an unrecorded mortgage is not wholly inoperative. It will avail against the mortgagor himself, or his alienee or mortgagee with notice . . .").

*MERSCORP, Inc. v. Del. Cnty.*, 207 A.3d 855, 867 (Pa. 2019) (underline emphasis added).

[9] Although Malka was purportedly involved in both TM and Petitioner, they are different entities. Section 1102-C.4 of the Act states, in relevant part: "For the purposes of this article, corporations and associations are entities separate from their members, partners, stockholders or shareholders." 72 P.S. § 8102-C.4. Thus, the July 31, 2015 assignment of the Mortgages to TM was not an assignment to Petitioner.

[10] The Dissent claims that "[t]here is nothing in section [1]102-C.3(16) which indicates that it was meant to define the exact 'sequence' of events to trigger the exclusion for transactions completed via deeds in lieu of foreclosure." *M6 Realty LLC v. Commonwealth* (Pa. Cmwlth. No. 797 F.R. 2017, filed August 4, 2021) (McCullough, J., dissenting) (Dissent), slip op. at 3. The language of Section 1102-C.3(16) itself mandates the very meaning the Dissent disputes. That section exempts "[a] transfer by a mortgagor **to the holder of a bona fide mortgage in default in lieu of a foreclosure** . . . ." 72 P.S. § 8102-C.3(16) (emphasis added). A transfer "to the holder of a bona fide mortgage in default" means that the transfer be made to a recipient holding (at the time of the transfer) a defaulted mortgage. *Id*.

[11] The Dissent asserts that the Majority "ignores the true nature of the transaction," and that "[t]he Majority's focus on the precise timing of the execution of the assignment in relation to the Deed in Lieu of Foreclosure is misplaced." Dissent, slip op. at 2. The Majority's focus is not misplaced since Petitioner argues in its brief only that "the tax is assessed at the time of recording" and "at the time of the submission of the Deed in Lieu for recording . . . [Petitioner] was the holder of the mortgage in default." Petitioner Br. at 11. **Petitioner makes no other argument apart from its equity argument** that because the Recorder did not charge the tax, it should not be

Petitioner next argues that this Court should reverse the imposition of the Transfer Tax based on equitable principles. Claiming that the tax assessed resulted from "mere clerical errors[,]" Petitioner argues that "had the Recorder's

required to pay the tax. Thus, Petitioner's brief contains no argument therein that the document titled "Deed in Lieu of Foreclosure" is not a document under the Act, and provides no legal support therefor. An undeveloped claim that is not explained factually nor supported by citations to law is unreviewable and waived. *See Commonwealth v. Knight*, 241 A.3d 620 (Pa. 2020). **Although this Court may consider issues subsumed within a petitioner's questions presented that are later raised within a petitioner's brief, the Court may not *sua sponte* address issues that were not raised or discussed at all**. *See Safe Harbor Water Power Corp. v. Fajt*, 876 A.2d 954 (Pa. 2005).

This Court notes that the Act applies to "document[s,]" 72 P.S. § 8102-C, and defines "[d]ocument" as "[a]ny deed, instrument or writing which conveys, transfers, devises, vests, confirms or evidences any transfer or devise" of an interest in real estate. Section 1101-C of the Act, 72 P.S. § 8101-C. Excluded from the definition of "document" are "mortgages, deeds of trust or other instruments of like character given as security for a debt and **deeds of release thereof to the debtor**[.]" *Id.* (bold and underline emphasis added). Here, apart from its title, the Deed makes no reference to the release from the mortgage obligations, and, by its own terms, "grant[s], bargain[s] and sell[s], release[s] and confirm[s] unto the said Grantee, as sole owner Street Address: 928 Lawn Avenue, Sellersville, PA[.]" Stip. Ex. A.

"The same principles that apply to the interpretation of a contract apply to the interpretation of a deed." *Starling v. Lake Meade Prop. Owners Ass'n, Inc.*, 162 A.3d 327, 341 (Pa. 2017). When interpreting a contract, the law is well established:

> [W]hat a contract is styled or labeled by the parties does not determine its character or their legal relationship, nor is the name given a contract determinative in its construction. Although courts may consider the title of a contract provision or section to interpret a contract, the greater weight must be given to the operative contractual clauses of the agreement. . . . [T]he proper construction of a contract is not dependent upon any name given it by the parties, but upon the entire body of the contract and its legal effect as a whole. In the determination of the real character of a contract, courts will always look to its purpose rather than to the name given it by the parties[.]

17A Am. Jur. 2d Contracts § 372 (2021) (footnotes omitted). Given the Deed's substantive language, its title does not control. Further, although the Dissent notes that "[t]he Deed in Lieu of Foreclosure from the Bodkins to Petitioner was executed pursuant to the Deed in Lieu Agreement, which expressly made the deed subject to the mortgages[,]" the Deed in Lieu Agreement is undated and defectively notarized. Dissent at 4. Again, because **Petitioner did not raise the issue that the Deed is not a document under the Act**, that issue is waived. *See Knight*; *Safe Harbor Water Power Corp.*.

11

Office rejected the submission because no [T]ransfer [T]ax was presented, Petitioner could have corrected the associated problem presented by the dates at issue in this matter. Because the documents were recorded, Petitioner was not afforded the benefit [a] rejection would have provided."[12] Petitioner Br. at 12-13. The Commonwealth retorts: "There is nothing in the record to show that "mere clerical errors" occurred. *See* [Stip.]. The Deed was executed and delivered five days before the [M]ortgages were assigned to [Petitioner]. Five days is not a clerical error." Commonwealth Br. at 25.

The Act determines whether a Transfer Tax is to be assessed on a transaction.[13] A recorder of deeds' duties are ministerial[14] and, thus, the Recorder's failure to collect the Transfer Tax is not determinative of Petitioner's Transfer Tax liability. Here, based upon the record, the September 3, 2015 transfer was a taxable transaction. There is no record evidence that the Recorder's failure to collect the Transfer Tax deprived Petitioner of any right. Simply put, the Property was transferred to Petitioner on September 3, 2015. At that time, TM held the mortgages to the Property, not Petitioner. Thus, Petitioner was not "the holder of a bona fide

---

[12] It appears that Petitioner characterizes the Recorder's acceptance of the documents absent payment of the Transfer Tax as "mere clerical errors[.]" Petitioner Br. at 12.

[13] This Court has explained:

> Where . . . the parties' rights are regulated and fixed by a comprehensive statutory scheme, the maxim, "equity follows the law," is applicable. *First Fed*[.] *Sav*[.] *& Loan Ass'n* [*of Lancaster*] *v. Swift*, . . . 321 A.2d 895 ([Pa.] 1974). . . . **A court simply "cannot devise a remedy which is inconsistent with existing legislation**." *Armstrong Sch*[.] *Dist*[.] *v. Armstrong Educ*[.] *Ass'n*, . . . 291 A.2d 125, 128 ([Pa. Cmwlth.] 1972).

*Commonwealth v. 6969 Forest Ave.*, 713 A.2d 701, 705 (Pa. Cmwlth. 1998) (emphasis added).

[14] *See MERSCORP.*

12

mortgage in default," and any subsequent action taken or not taken by the Recorder did not change that fact. As such, there is no basis for equitable relief.[15]

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[15] Citing *Tyson v. Commonwealth*, 684 A.2d 246 (Pa. Cmwlth. 1996), Petitioner argues that this Court has "vacated the Board's decisions in the past using equitable principles." Petitioner Br. at 12. In *Tyson*, the taxpayers raised an argument before this Court seeking Transfer Tax relief under a different exclusion than the exclusion they had originally claimed. Despite the taxpayers' failure to raise the exclusion earlier, this Court considered it, explaining,

> [a]lthough we cannot deny that it would have been preferable for the Tysons to have specified a [S]ection 1102-C.3(11) [of the Act] exclusion in their [p]etition for [r]eview, the fact that they did not do so does not prevent us from considering the issue, particularly where the Commonwealth has fully briefed the merits of the issue for this [C]ourt's *de novo* review.

*Tyson*, 684 A.2d at 250. The *Tyson* Court concluded:

> In light of the unique circumstances of this case, we believe that, despite the Tysons' general claim of exclusion under [S]ection 1102-C.3 of the Act, the Commonwealth was fairly apprised of the Tysons' claim to an exclusion under subsection 1102-C.3(11) [of the Act]. To conclude otherwise would be to place the niceties of pleading above equitable principles, and we decline to do so.

*Tyson*, 684 A.2d at 250. *Tyson* is inapposite. In *Tyson*, this Court excused pleading requirements based on equitable principles. Nothing in *Tyson* permits this Court to disregard the explicit requirements of the Act mandating the imposition of a Transfer Tax for the September 3, 2015 transfer. *See 6969 Forest Ave*.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M6 Realty LLC, a New Jersey Limited  :
Liability Company,                     :
               Petitioner     :
                            :
           v.                  :
                            :
Commonwealth of Pennsylvania,   :   No. 797 F.R. 2017
               Respondent   :

## O R D E R

AND NOW, this 4th day of August, 2021, the Board of Finance and Revenue's August 23, 2017 order is AFFIRMED.

The Prothonotary shall enter judgment in favor of the Commonwealth of Pennsylvania and against M6 Realty LLC, unless exceptions are filed within 30 days after entry of this order, pursuant to Pennsylvania Rule of Appellate Procedure 1571(i).

_____
ANNE E. COVEY, Judge

M6 Realty LLC, a New Jersey Limited  :
Liability Company,  :
               Petitioner  :
  :  No. 797 F.R. 2017
        v.  :
  :  Submitted: June 10, 2021
Commonwealth of Pennsylvania,  :
             Respondent  :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge

***OPINION NOT REPORTED***

DISSENTING OPINION
BY JUDGE McCULLOUGH                FILED: August 4, 2021


The Realty Transfer Tax Act (Act)[1] specifically excludes the transfer of property from a mortgagor to the holder of the mortgage through a deed in lieu of foreclosure from the realty transfer tax. Section 1102-C.3(16) of the Act,[2] 72 P.S. §8102-C.3(16); *Provident Mutual Life Insurance Company v. City of Philadelphia Tax Revenue Board*, 750 A.2d 942, 946 (Pa. Cmwlth. 2000). For this reason, I must respectfully dissent from the well written majority.

The parties' Joint Stipulation of Facts establishes that: (1) First Bank of Perkasie (Bank) loaned Robert E. Bodkin, III and Rebecca Bodkin (collectively, Bodkins) $755,000, as evidenced by two promissory notes, the repayment of which

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, added by Section 4 the Act of May 5, 1981, P.L. 36, 72 P.S. §§8101-C-8114-C.

[2] Added by the Act of July 2, 1986, P.L. 318.

was secured by two mortgages on a property located at 928 Lawn Avenue, Sellersville, Pennsylvania 18960 (Property); (2) the notes and mortgages were assigned to M6 Realty LLC (Petitioner); (3) the Bodkins were in default of the notes and mortgages; (4) Petitioner and the Bodkins entered into a "Deed in Lieu Agreement" whereby Petitioner expressly agreed to release the Bodkins from the notes and mortgages in exchange for a Deed in Lieu of Foreclosure; and (5) pursuant to that Agreement, the Bodkins executed and recorded a Deed in Lieu of Foreclosure transferring the property to Petitioner. Joint Stipulation of Facts, ¶¶2-7, at 2-3, and Exhibit F to Joint Stipulation (Deed in Lieu Agreement).

To say that Petitioner owes a transfer tax because it was not the holder of a bona fide mortgage in default encumbering the real estate at the time the real estate was transferred ignores the true nature of the transaction, which is our guide when deciding whether a transfer tax is due. *See Hahnemann Medical College & Hospital of Philadelphia v. Commonwealth*, 416 A.2d 604, 607 (Pa. Cmwlth. 1980) (finding that in form a legal document appeared to be a conveyance of real estate, but was in fact a mortgage and therefore was not taxable).

These events are all part of a single transaction that, when viewed as a whole, indicates Petitioner stepped into the shoes of the Bank and assumed the Bank's rights under the Bodkins' promissory notes and mortgages. Rather than commencing a judicial foreclosure against the Bodkins to obtain title to the Property, Petitioner entered into the Deed in Lieu Agreement and accepted from the Bodkins the Deed in Lieu of Foreclosure. This is a foreclosure transaction which is excluded from the transfer tax.

The Majority's focus on the precise timing of the execution of the assignment in relation to the Deed in Lieu of Foreclosure is misplaced. Because the

Assignments of Mortgage were executed five days after the Deed in Lieu of Foreclosure was recorded, the Majority concludes that Petitioner was not "the holder of a bona fide mortgage in default in lieu of a foreclosure" on September 3, 2015, when the Property was transferred. Section 1102-C.3(16) of the Act, 72 P.S. §8102-C.3(16). Under the Majority's reading of section 1102-C.3(16), unless the assignment is executed before the Deed in Lieu of Foreclosure is executed, the transaction is subject to a transfer tax. I do not agree that this five-day lapse controls whether the transaction is subject to the realty transfer tax. There is nothing in section 1102-C.3(16) which indicates that it was meant to define the exact "sequence" of events to trigger the exclusion for transactions completed via deeds in lieu of foreclosure.

Pursuant to the Act, a tax is imposed upon transfers of title, but excludes certain transactions including foreclosures, financings, and mortgages. To that end, the Act excludes from definition of "document" deeds in lieu of foreclosure. In this regard, Section 1102-C of the Act (Imposition of Tax) provides, in part:

> Every person who makes, executes, delivers, accepts or presents for recording **any document** or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect to the transaction or any part thereof . . . .

72 P.S. §8102-C (emphasis added).

"Document" as used in this section is defined in the Act as one which "conveys, transfers, demises, vests, confirms or evidences any transfer or demise" of an interest in real estate. Section 1101-C of the Act, 72 P.S. §8101-C.

A "deed in lieu of foreclosure" is a not a "document" under Section 1102-C of the Act, 72 P.S. §8102-C. A deed in lieu of foreclosure is defined as "**[a] deed by which a borrower conveys fee-simple title to a lender in satisfaction of**

**mortgage debt and as a substitute for foreclosure.**"  Black's Law Dictionary 476 (9th Ed. 2009) (emphasis added).  It is a foreclosure instrument, which is specifically excluded from the definition of "document" under section 1101-C of the Act, 72 P.S. §8101-C (excluding from the term "document" - "mortgages, deeds of trust, or other instruments of like character given as security for a debt and deeds of release thereof to the debtor").

This should be the end of the inquiry.

Nevertheless, by focusing on the sequence of events instead of viewing the transaction as a whole, the Majority's analysis does not capture the realities of the actual transaction at issue.  As our Supreme Court has explained, "[f]orm over substance is not the law of this Commonwealth, and, quite to the contrary, tax cases must be decided on realities.  Especially in tax cases, substance controls over form." *Baehr Brothers v. Commonwealth*, 409 A.2d 326, 329 (Pa. 1979).  Here, the undisputed details of the transaction reveal that the transaction between Petitioner and the Bodkins falls squarely within the concept of a foreclosure.

The Majority's conclusion that the Deed in Lieu of Foreclosure should be deemed a standard deed and therefore a "document" under the Act because it makes no reference to the release of the Bodkins from their mortgage obligations is equally without merit.

The Deed in Lieu of Foreclosure from the Bodkins to Petitioner was executed pursuant to the Deed in Lieu Agreement, which expressly made the deed subject to the mortgages.  The mortgages in turn explicitly authorize the holder to foreclose, and a holder of a mortgage may accept a deed in lieu of foreclosure as a substitute to foreclosure.  The fact that the Deed in Lieu of Foreclosure itself did not

contain release language does not alter the fact that the transaction between Petitioner and the Bodkins was in both form and substance a foreclosure.

Lastly, I cannot join in the Majority's conclusion that Petitioner waived the issue of whether the "Deed in Lieu of Foreclosure" at issue is a "document" as defined in section 1102-C of the Act, 72 P.S. §8101-C. I believe that issue is fairly subsumed within the salient question before us – that is, whether a transfer tax was properly imposed upon the parties' underlying transaction. Part of what we are asked to do in this appeal is to construe the Act. In my view, that entails analyzing together all of the provisions of the Act that relate to the transactions which are excluded from the transfer tax. In any event, even if Petitioner waived the issue of whether the Deed in Lieu of Foreclosure is a "document" under the Act, it is still clear that the transaction was in the nature of a foreclosure and foreclosure transactions, including those by deed in lieu of foreclosure, are excluded from the realty transfer tax. In other words, Petitioner does not need to establish that the Deed in Lieu of Foreclosure was not a "document" under section 1102-C of the Act, 72 P.S. §8101-C to prevail.

Because the conveyance of real estate in the underlying transaction in this appeal was by a Deed in Lieu of Foreclosure and because it was overall in the nature of a foreclosure, it is not subject to the transfer tax under section 1102-C, 72 P.S. §8102-C of the Act.

Accordingly, for these reasons, I dissent.

_____
PATRICIA A. McCULLOUGH, Judge